22182

The STATE, Respondent, v. Jonathan CHAFFEE and Dallas Ferrell, Appellants.

(328 S. E. (2d) 464)

Supreme Court

*William Isaac Diggs, Deputy Appellate Defender,* Columbia, *E. Delance Poston* and *Benjamin D. Moore,* Johnsonville, *for appellant Chaffee.*

*David I. Bruck*, Columbia, *Charles E. Godwin*, and *Michael L. Morgan*, Lake City, *for appellant Ferrell.*

*T. Travis Medlock, Atty. Gen., Harold M.Coombs, Jr., Charles H. Richardson, Asst. Attys. Gen.*, Columbia, and *Dudley Saleeby, Jr., Sol., Twelfth Judicial Circuit*, Florence, *for respondent.*

Heard Sept. 10, 1984.

Decided Nov. 13, 1984.

*Per Curiam:*

The Defendant-Appellant, Jonathan Chaffee, and the Defendant-Appellant, Dallas Ferrell, were indicted for the offenses of criminal conspiracy, murder, criminal sexual conduct in the first degree (four counts), armed robbery, larceny, housebreaking, and arson. At the first phase of a bifurcated trial, both were found guilty on all counts except armed robbery. At the second phase of the bifurcated trial, the jury found that both should die by electrocution on the murder count. Sentences were imposed accordingly. Sentences for terms of years were imposed on the other counts. From these convictions and sentences, both have appealed. We affirm.

Ferrell has filed sixteen exceptions which he argues in the form of eight questions in his brief. Chaffee has filed twenty-five exceptions which he argues in the form of twelve questions in his brief. Some of the exceptions are identical or nearly so and will be treated together. Others will of necessity be treated separately. All exceptions have been considered.

At about 4 o'clock in the afternoon on May 10, 1982, Chaffee, age 23, and Ferrell, age 24, went to the home in Florence of Mrs. Adele Baroody, an eighty-one-year-old widow, for the ostensible purpose of getting a drink of water. She allowed them to enter her home and supplied their needs; upon the arrival of her daughter-in-law, Mrs. Elizabeth Baroody, at the home the two men left. The daughter-in-law left shortly after their departure. Soon thereafter, the two men returned to the home and with the use of force entered through a door. Ferrell held a gun on Mrs. Baroody while Chaffee proceeded to disrobe and assault her. Through force, they carried her upstairs and onto a bed where both committed rape upon her body,

both regularly and by way of the anus. They then stangled her by wrapping her own panty hose around her neck creating pressure with the "tourniquet." A mop handle was also rammed into her chest, and she was cut about the breasts with a broken light bulb. Her feet were tied to the bed posts.

Thereafter, they stole property from the house and in order to destroy the evidence of their crimes set fire to the building and left. When neighbors saw smoke coming from the building, the fire department was called and arrived about 6 o'clock p.m. to extinguish the blaze.

The daughter-in-law of Mrs. Baroody gave to the police officers descriptions of the men she had seen in the home of Mrs. Baroody. Using these descriptions, they located both defendants in the vicinity and detained them.

Each of the defendants, on separate days and acting independently of each other, gave a video taped confession demonstrating in the home of Mrs. Baroody how they committed the crimes. The testimony of each, as included in the respective confessions, is consistent with the evidence supplied by other witnesses. The confession of each is also consistent with the other although each has some details not included by the other. The convictions are based in large measure on these two confessions. Neither testified at either stage of the trial.

We consider the entire record to determine whether the defendants did or did not receive a fair trial.

## I.

Both Chaffee and Ferrell submit that the trial judge erred in excusing Mattie L. Clea from jury service after *voir dire* because of her views as related to capital punishment citing *Witherspoon v. Illinois*, 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968). Ms. Clea was questioned at length. In the last analysis, it became the duty of the judge to determine whether she was qualified under *Witherspoon*. In making the determination, he was not required to, and should not, single out any one question and answer. The questioning process must always be viewed in its entirety. *State v. Linder,* 276 S. C. 304, 278 S. E. (2d) 335 (1981); *State v. Elmore,* 279 S. C. 417, 308 S. E. (2d) 781, (1983). There was a reasonable basis for him to conclude that this prospective juror was unable to faithfully discharge her responsibility as

a juror under the law. The ruling was consistent with the mandate of Section 16-3-20(E) of the Cum. Supp. of the 1976 Code which addresses the circumstances under which a person may be disqualified in a death penalty case from service on a jury panel. We find no error.

## II.

It is next the contention of both Chaffee and Ferrell that they were illegally detained and arrested and that the confessions and other evidence procured was "the fruit of the poisonous tree" and should have been excluded by the trial judge. A hearing was held out of the presence of the jury in response to motions to suppress. As a basis for the judge's ruling that the confession and the evidence was admissible, he had before him the following information: After the fire department had arrived about 6 o'clock to extinguish the fire at the Baroody home, police officers also came and were supplied with information by the daughter-in-law of Mrs. Baroody. She described the two men who had gained entrance to the home of the deceased person shortly before. Detective Raines told the judge that he knew Chaffee inasmuch as he had arrested him previously and that he was familiar with the fact that he had previously been suspected of arson. He suspected that arson was the cause of the fire at the Baroody home. Chaffee was located down the street in the park. Upon being accosted, Chaffee stated that he had been to the house earlier and upon request, accompanied the police officers to the victim's house and pointed out that this was the house he had previously visited. It was the Baroody residence. Chaffee told the officers that Dallas Ferrell had accompanied him. Ferrell was found in front of the burned house. Both Chaffee and Ferrell were given *Miranda* warnings. It is not contested but that the officers had probably cause to believe that a felony or felonies had been committed. It is argued that they had no probable cause to believe that Chaffee and Ferrell were the perpetrators.

Approximately five hours after police officers had accosted Chaffee and Ferrell, a confession was given and a watch taken from the Baroody home was found on the person of Chaffee. During this period of time, the two suspects were not under formal arrest but were inescapably restrained from leaving.

*Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. (2d) 889 (1968), recognizes the rights of officers to temporarily detain suspects for investigative purposes even though no information is available at the time as a basis for procuring an arrest warrant. The time and the circumstances of the detention depends upon the nature and the extent of the governmental interest involved. We quote from that case:

> One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purposes if investigating possibly criminal behavior even though there is no probable cause to make an arrest.

The reasonableness of the law appreciates the fact that on occasion one may be wrongfully stopped, frisked and detained. The reasonableness of an officer's conduct and detention is related to all of the circumstances including the nature of the crime. Here, it was evident that the worst of crimes had been committed; the suspicion, even if short of probable cause, was great. Counsel for the appellants cite and rely upon the recent case of *Florida v. Royer,* 460 U. S. 491, 103 S. Ct. 1319, 75 L. Ed. (2d) 229 (1983). Therein, the Court said:

> ... The scope of the detention must be carefully tailored to its underlying justification.
> The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *See, e.g., United States v. Brignoni-Ponce,* 422 U. S. [873] at 881-882, 95 S. Ct. [2574] at 2580-2581 [45 L. Ed. (2d) 607 (1975)], *Adams v. Williams,* 407 U. S. [143] at 146, 92 S. Ct.

[1921] at 1923 [32 L. Ed. (2d) 612 (1972)]. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

We agree with the trial judge who said: "And I do not believe that their Fourth Amendment rights have been violated, considering the totality of the circumstances, that is, the whole picture which I have taken into account, and based upon this I am of the opinion that the officers had a particularized and effective faces [sic] [apparently basis] for suspecting the persons stopped of criminal activity." We find no error.

### III.

Both Chaffee and Ferrell submit that the trial judge erred in admitting into evidence video taped confessions and reenactment of the crimes. Each had, on the night of the crimes and after being given *Miranda* warnings, confessed to his participation. On the following day, May 11th, Chaffee agreed to reenact the crimes on the premises for video taping. On the following day, May 12th, Ferrell also agreed to reenact the crimes for video taping. In each instance, prior to reenactment, appropriate *Miranda* warnings were again given. The judge found that each acted voluntarily, knowingly, and intelligently. The gist of the objections now raised is that the video taping was such potent evidence that *Miranda* warnings were not sufficient. We disagree. We dealt with this issue in *State v. Stroman,* 281 S. C. 508, 316 S. E. (2d) 395 (1984). The Supreme Court of Georgia has ruled in similar fashion. *Gates v. The State,* 244 Ga. 587, 261 S. E. (2d) 349 (1979). We find no error in the use of the video tapes in both phases of the bifurcated trial.

### IV.

Both Chaffee and Ferrell contend that the trial judge erred in his instruction to the jury involving the voluntariness of the appellants' confessions. They point out portions of the judge's charge as a basis for their argument that there was no compliance with the requirements of *Mi-*

*randa v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966). We have often held that the charge of the judge must be considered in its entirety. *State v. Vaughn,* 268 S. C. 119, 232 S. E. (2d) 328 (1977). When the judge's charge is considered as a whole, it is patent that he correctly stated the applicable law and the jury was warranted in finding that the confessions were uninfluenced by promise of reward, threats, or deprivation of rights and were voluntary. We find no error.

## V.

It is argued that the trial judge erred in failing to define "torture" to the jury. We are not at all sure under the facts of this case that such was required. If failure to define torture be error, it would not effect the convictions nor the sentences because the jury found two other statutory aggravating circumstances as a basis for their finding that these accused persons should suffer death by electrocution. It is sufficient to support the death penalty that one aggravating circumstance be proved. *State v. Plath,* 281 S. C. 1, 313 S. E. (2d) 619 (1984). Here, in addition to torture, the jury found both housebreaking and rape. We find no error.

## VI.

Both appellants contend that the Solicitor's jury argument at the sentencing hearing was inflammatory and deprived them of a fair trial. We have held that when a Solicitor's personal opinion is explicitly interjected into a jury deliberation, the subsequent sentence should be vacated. *State v. Woomer,* 277 S. C. 170, 284 S. E. (2d) 357 (1981); *State v. Smart,* 278 S. C. 515, 299 S. E. (2d) 686 (1983). We have also held that the trial judge is vested with broad discretion in dealing with the propriety of the argument of a Solicitor to a jury. *State v. Durden,* 264 S. C. 86, 212 S. E. (2d) 587 (1975).

We held in *State v. Plath, supra,* a momentary lapse of good taste will rarely constitute prejudicial error nor does robust language inject an arbitrary factor into a trial. The latitude allowed counsel in argument may depend upon the issues involved and the nature of the trial. A trial judge is in a better position to rule upon the propriety of the argument than is this Court from a cold printed record. This was a discretionary matter and we decline to hold that the judge erred.

## VII.

It is conceded that the two separate confessions were in fact interlocking with the respect to the Defendants' guilt or innocence because each confession contains a full admission by its maker. But, it is argued that there was prejudice by failure of the judge to grant a severance particularly at the sentencing stage of the trial. It is argued that there is included in the confession of one, derogatory statements not admitted in the other confession. It is contended that counsel for each Defendant had no opportunity to cross-examine the maker of the other's statement, and further argued that the jury might have been influenced prejudicially as to one Defendant by reason of the statements of the other. Severance is a matter of the discretion of the trial judge. We are of the opinion that the judge did not err in permitting joint trials at both the guilt and penalty stages.

Confessions are said to be interlocking when they are substantially the same and consistent concerning the major elements of the crime involved; they need not be identical. They are normally admissible in joint trials.

In actuality, the confessions, while not identical, are not greatly different. A reading of the two confessions indicates that each Defendant is equally culpable. There is no real dispute as to the important elements as to the crimes. Certainly, the jury was warranted in concluding that both were guilty and that both were guilty of the same aggravating circumstances and were justified in finding that there were no mitigating circumstances available to either.

Ferrell's Confession: Ferrell said they talked of raping Mrs. Baroody before they broke into her house. He said after entering, "I had a gun pointed at her." Further: "I got on and got — had sex with her" . . . "We made her have oral sex with us" . . . "I hit her about once or twice with my open hand;" he further stated that he hit her with his fists. Continuing: "That's when we had oral sex — anal sex with her" . . . "He [Chaffee] took it [panty hose] and tied it around her neck and started choking her with it and gave me the other end" . . . "I guess he wanted me to help him" . . . "Me and Jonathan both got the tape player."

Chaffee's Confession: As they entered the house ". . . we unzipped our pants" . . . , "I tried to have sex with her but

couldn't enter. We dragged her up the stairs" ... "I looked in the drawers and found a watch" ... "had her legs closed together so I tried to spread them apart. Then I proceeded to f ... her. I had penetrated her but couldn't keep it in because she kept moving" ... "She started screaming, 'kill me' ... So we started beating her with a broken lamp, a cord, and a coat hanger" ... Further confessing, he said, "We hit her with a stick, a broom. I stuck her with a broom handle" ... "I stuck her once with the end of the stick" ... "Then I set the fires. I went down stairs and set the fires to destroy the evidence." "We f ..... her in the tail with the gun."

From a brief summary of the evidence recited above, it is apparent that the hand of one was the hand of all and neither should be able to find any comfort in a spurious argument that, "I am less culpable than my partner in crime."

The judge on more than one occasion instructed the jury that each confession must be considered separately and that each confession could be considered against the confessor alone. Before the confessions were presented to the jury, he stated:

> ... And I would further charge you that any statement or confession by either of the defendants you can only consider that as it pertains to him and not to the other one. Any statement made by either Defendant Chaffee, any statement by him you would consider that only as to him. Any statement made by Defendant Ferrell, you would consider that only as to him, and not against the other. And, of course, that's after you find that it was freely and voluntarily given, if you were to find that. Otherwise, you wouldn't give it consideration. ...

Later, when he charged the jury during the guilt phase, he said:

> Now I instructed you during the trial and I charge you now that you must not and cannot consider any confession that either of the defendants made as to the other defendant. You will consider any alleged statement or confession only as to the person making it and not against the other defendant.

Later in his charge, he said:

I specifically instruct you, Mr. Foreman and Ladies and Gentlemen, that you are to consider the verdicts against each individual separately, and your verdict, of course, does not have to be the same for both defendants. It may or may not. Of course, depending upon your view of the evidence.

In moving for a severance at the beginning of the sentencing phase, counsel presumably desired that the judge proceed with the same jury for one of the defendants and draw a new jury for the sentencing phase of the other. We think the judge within his discretionary authority correctly overruled the motion and agree that severance simply was not warranted in order to assure a fair trial.

## VIII.

Counsel for both defendants submit that the trial judge erred in charging the jury that it should not be governed by sympathy, prejudice, or passion, or by public opinion, citing *Lockett v. Ohio*, 438 U. S. 586, 98 S. Ct. 2954, 57 L. Ed. (2d) 973 (1978). During the argument of State's counsel, the attorney for Chaffee asked for a mistrial because the argument "... has been prejudicial and has inflamed the passions of the jury in this case to the extent that these defendants cannot receive a fair and impartial trial." In overruling the motion, the judge said: "I am going to instruct the jury, of course, that they are not to base their verdict upon any passion, sympathy, or anything of that nature." In keeping with that assertion, the judge instructed the jury as follows:

I charge you that as jurors you must decide the issues involved in this proceeding without bias and without prejudice to any party. You cannot allow yourselves to be governed by sympathy, by prejudice, by passion, or by public opinion.

Whether the judge was referring to sympathy for the dead woman and her family or for the defendants is not clear. In either event, we find no error.

## IX.

At the sentencing phase of the trial, Chaffee introduced evidence by Dr. King, a psychiatrist, to the effect that he had a psychopathic personality disorder. In reply, the State offered the testimony of T. V. Smith, a clinical psychologist, and of Dr. Curtis Beebe. They had seen Chaffee at the behest of the Court for the purpose of determining whether he was capable of standing trial. The examination was held some two weeks after the crimes were committed. Chaffee admitted that prior to the examination he voluntarily signed a statement as follows:

> I hereby certify that the following have been explained to me and that I fully understand. I have been committed to the South Carolina State Hospital upon the order of a judge in the Court of General Sessions, or a Family Court Judge, because I have been accused of a criminal offense and it has been deemed necessary to determine my competency to stand trial and/or my criminal responsibility according to the M'Naghten Rule, and my attending physician in the hospital staff must submit a written report to the court concerning my mental condition and capacity to stand trial and/or criminal responsibility, and my attending physician and the hospital staff may be required to testify in a court of law concerning the results of this examination and evaluation in confidence, and I have a constitutional right to avoid devulging anything that might be self-incriminating and therefore am not compelled to discuss the actual events surrounding the crime of which I am accused and I have a right to consult my attorney prior to any interview and/or examination to ensure that my constitutional rights are observed.

Smith testified that he inquired of Chaffee whether he had signed the statement and if he understood it, to which Chaffee replied affirmatively. Based on the trial judge's understanding of rulings of the Court in *Estelle v. Smith*, 451 U. S. 454, 101 S. Ct. 1866, 68 L. Ed. (2d) 359 (1981), he ruled, ". . . I am going to allow either Mr. Smith or Dr. Beebe to testify *as to their observations only*. And not as to any matters disclosed by Mr.

Chaffee because I do not feel that the burden has been carried in reference to the psychological examination." (Emphasis added.) State's counsel meticulously adhered to this ruling such that nothing Chaffee said to Mr. Smith was quoted to the jury. The case before us is distinguishable from *Estelle* in that Mr. Smith was permitted to testify only as to his observations and gave no testimony as to any statement made by Chaffee. No testimony of an accusatory nature was elicited from Mr. Smith by State's counsel. One other distinguishing feature between this case and *Estelle* lies in the fact that in *Estelle*, the testimony was not in reply to testimony submitted by the accused party but was on the other hand testimony presented in chief by the State to persuade the jury that electrocution was the appropriate sentence. We find no error.

## X.

At the sentencing stage of the trial, counsel for Chaffee sought to have Dr. William King testify as to the adaptability of his client to the environment of prison life. The testimony was not allowed.

In *State v. Koon*, 278 S. C. 528, 298 S. E. (2d) 769 (1982), the Court said:

> The penalty phase of a capital murder case is concerned with the existence or nonexistence of mitigating or aggravating circumstances involved in or arising out of the murder, not the convicted murderer's adaptability to prison life. The jury is concerned with the circumstances of the crime and the characteristics of the individual defendant as they bear logical relevance to the crime.

From a reading of the mitigating circumstances enumerated in the Code relating to the punishment for murder, it is obvious that the Legislature never intended that the judge and/or the jury gaze into the crystal ball and attempt to speculate on whether the prisoner would or would not conduct himself properly in prison. We find no error.

## XI.

Pursuant to Section 16-3-25(C), *Code of Laws of South Carolina* (Cum. Supp. 1978), it is the duty of this Court to review the record and determine with regard to the sentence imposed:

(1) Whether the sentence of death imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in § 16-3-20, and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Upon a review of the record, we concur with the ruling of the trial judge as to each of the convicted persons when he said: "I find as an affirmative fact that the evidence of the case warrants the imposition of the death penalty and that its imposition is not a result of prejudice, passion, or any other arbitrary factor."

We further find that the evidence overwhelmingly supports the jury's findings beyond a reasonable doubt that the statutory aggravating circumstances of rape [now codified as criminal sexual conduct], housebreaking, and torture as enumerated in *South Carolina Code Ann.* Section 16-3-20 (Cumm. Supp. 1978) were proved.

The evidence quoted hereinabove describes the gruesome details which need not be repeated here. The happenings of the afternoon of May 10, 1982, involved a series of crimes about as savage as any known to the law.

We have further examined and researched past death penalty cases in this State tried under the current statute in an attempt to determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendants. *South Carolina Code Ann.* Section 16-3-25(C)(3).

Cases tried in this State under the death penalty statute resulting in capital punishment heretofore, involved factual situations, and accused persons, similarly atrocious to those involved in this case. It is our observation that a unanimous jury in South Carolina has ordered the death penalty in only those cases where the proof of facts is virtually undebatable and the nature of the wrongful killing is such as to shake the conscience of the community. The facts are not the same in any two cases and, accordingly, our review of the facts relate largely to degree of culpability of the defendants and the

viciousness of the killing. In the case at hand, there is no semblance of an excuse for the wrongfful killing, nor does the record reveal any facts relative to the accused persons themselves that would warrant leniency. Our comparison includes: *State v. Yates*, 280 S. C. 29, 310 S. E. (2d) 805 (1982), *State v. Gilbert*, 277 S. C. 53, 283 S. E. (2d) 179 (1981), *cert. den.*, 456 U. S. 984, 102 S. Ct. 2258, 72 L. Ed. (2d) 863, *State v. Shaw*, 273 S. C. 194, 255 S. E. (2d) 799 (1979), *cert. den.*, 444 U. S. 957, 100 S. Ct. 437, 62 L. Ed. (2d) 329, *Roach v. South Carolina*, 444 U. S. 1026, 100 S. Ct. 690, 62 L. Ed. (2d) 660 (1980), *State v. Woomer*, 276 S. C. 258, 277 S. E. (2d) 696 (1981), 278 S. C. 468, 299 S. E. (2d) 317 (1982), and *State v. Thompson*, 278 S. C. 1, 292 S. E. (2d) 581 (1982) *cert. den.*, 456 U. S. 938, 102 S. Ct. 1996, 72 L. Ed. (2d) 458. *State v. Plath, et al*, 281 S. C. 1, 313 S. E. (2d) 619 (1984); *State v. Koon, supra.*

The defendants in this case were mature adult men. They broke into the home of an eighty-one-year-old widow through force and after criminally assaulting her in several ways strangled her to death and set fire to her house in an effort to cover up the crimes. It would be difficult to conceive of crimes more heinous. We find that the penalty imposed is not disproportionate to the penalty imposed in other cases under the comparatively new death penalty statute. The jury had ample opportunity to weigh all of the evidence that might relate to mitigating circumstances and found none offsetting the aggravating circumstances. We agree.

In addition to considering all issues raised by counsel, we have examined the entire record because of the doctrine of *in favorem vitae* to ascertain if there are reasons to upset the jury's verdict notwithstanding any failure of counsel to raise other issues. We have found no reversible error. The convictions and sentences of the Appellant Jonathan Chaffee and the Appellant Dallas Ferrell are accordingly

Affirmed.