481 S.E.2d 432

**The STATE, Respondent,**

**v.**

**Terry Lee HUTTO, Appellant.**

**No. 24573.**

Supreme Court of South Carolina.

Heard Jan. 8, 1997.

Decided Feb. 10, 1997.

Lesley M. Coggiola, Assistant Appellate Defender, South Carolina Office of Appellate Defense, Columbia, for appellant.

Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, and Robert F. Daley, Jr., Assistant Attorney General, Columbia, and Donald V. Myers, Solicitor, Eleventh Judicial Circuit, Lexington, for respondent.

WALLER, Justice:

Appellant Terry Lee Hutto was convicted of murder, first degree burglary, and malicious injury to telegraph, telephone or electric utility system. The sole issue in this case is whether the trial judge properly admitted certain testimony of an expert witness regarding a match between a footprint found at the crime scene and Appellant's shoe. We affirm.

Two agents from South Carolina Law Enforcement Division ("SLED"), Thomas Darnell and John Christy, examined the crime scene on the night of the murder. They collected all of the evidence at the scene, including a business card, and took it to SLED. Agent Christy subsequently placed a chemical on the business card, raising a latent footprint. He then wrote

out a report giving his opinion finding a match between this footprint and the sole of a shoe owned by Appellant.[1] The card then went to Agent Charles Counts, who also rendered his opinion finding a match. Agent Counts testified this was a completely independent determination. He also testified it was SLED's practice to have at least two agents separately examine evidence "to ensure the credibility of SLED by two agents and two independent experts examining the evidence and rendering an opinion." Of course, by the time he got the card the print had already been raised by Agent Christy and therefore did not need to be reprocessed.

During the course of Appellant's trial, the card was admitted into evidence.[2] Agent Christy did not testify because he was on extended medical leave. Instead, Agent Counts testified that he found a match between the print raised by Agent Christy and Appellant's shoe. He testified there was one certain procedure followed by all SLED agents when attempting to raise a latent print from a substance like the business card.

On a porous-type item such as paper or cardboard, which State's Exhibit 37 is cardboard or a piece of paper, business card, we would all treat this internationally alike. We would treat it with an inhydrant, a chemical that reacts with the amino acids. And your hands and your feet are constantly exuding perspiration. And a .15 to .5 percent of that perspiration is your amino acids. So we are looking for ridge detail exuded by the hands or the feet in order so that if their hands or feet come in contact with this particular card or anything with amino acids on it, when we treat it with an inhydrant the inhydrant dies [sic] the amino acids a deep purple where it makes it visible to the human eye.

Agent Counts testified that every SLED agent is trained to do this testing.

Appellant stipulated Agent Counts was an expert in footwear examination. However, Appellant argues Agent Counts's testimony violated his right to confront evidence

1. This report was not admitted into evidence.

2. Appellant is not appealing this admission.

against him [3] because Counts did not process the card himself and thus his opinion was based on "indirect hearsay." We disagree.

At the outset, we note it is well-settled that an exception to the rule prohibiting hearsay exists when it is used by an expert.[4] An expert may base his opinion on hearsay evidence so long as it is of a type reasonably relied upon by other experts in the field. *State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357, *cert. denied,* —— U.S. ——, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995) (psychiatrist who never examined defendant may base opinion on reports prepared by persons who did).[5] *See also* 31A Am.Jur.2d *Expert and Opinion Evidence* § 85 (1989) (type of information on which experts may rely is that on which they would customarily rely in the day to day decisions of their profession); 32 C.J.S. *Evidence* § 546(63) (1964) ("witness may base his judgment in part on the result of experiments made by himself or by others").

However, merely because testimony does not violate applicable rules of evidence does not necessarily mean it meets constitutional standards. "Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements." *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651 (1990). *See also United States v. Williams,* 447 F.2d 1285, 1288 (5th Cir.1971) (en banc), *cert. denied,* 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972) (Supreme Court's decision in *California v. Green,* 399 U.S. 149, 90 S.Ct.

---

3. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him"); S.C. Const. art. I, § 14 ("Any person charged with an offense shall enjoy the right to ... be confronted with the witnesses against him").

4. We assume for the purposes of this opinion that Agent Counts's opinion was partly based on hearsay.

5. This rule was stated in former Rule 43(m)(2), SCRCP and former Rule 24(b), SCRCrimP. These rules governed Appellant's trial, which occurred August 16–18, 1995. The rule is currently found in Rule 703 of the South Carolina Rules of Evidence, which became effective September 3, 1995.

1930, 26 L.Ed.2d 489 (1970), made it clear that "the right of confrontation and the rule against hearsay present two distinct, albeit related questions"); *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982) (values of hearsay rule and Confrontation Clause are not identical; admission of certain evidence may be barred by one and not the other). In *Ohio v. Roberts* [6] the Supreme Court addressed the relationship between the Confrontation Clause and the hearsay rule with its exceptions:

> The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme.

448 U.S. at 62–63; 100 S.Ct. at 2537, 65 L.Ed.2d at 605–06 (internal citations omitted). *Roberts* recognized that an individual's right to confrontation is so important that "the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process." *Id.* at 64, 100 S.Ct. at 2538, 65 L.Ed.2d at 606. However, it also noted that "competing interests ... may warrant dispensing with confrontation at trial." *Id.* "Significantly, every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." *Id.* at 64, 100 S.Ct. at 2538, 65 L.Ed.2d at 607.

*Roberts* set out a general test to be used in weighing these competing interests. First, it found that when a hearsay declarant is not present at trial the Confrontation Clause "normally requires a showing that he is unavailable." *Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. It emphasized, however, that unavailability is not always required, such as when "the utility of trial confrontation [is] so remote that it [would] not require the prosecution to produce a seemingly

---

6. 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

available witness." *Id.* at 65, 100 S.Ct. at 2538, 65 L.Ed.2d at 607 (n. 7).[7] Second, the hearsay statement must bear adequate indicia of reliability. *Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. Regarding this element, the Court stated, "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.*

■ Cases following in the wake of *Roberts* show that "[t]he confrontation clause of the sixth amendment to the Constitution does not forbid reliance at trial by experts upon material prepared by others." *United States v. Smith,* 869 F.2d 348, 355 (7th Cir.1989). For example, in *Reardon v. Manson* the Second Circuit Court of Appeals upheld the admission of an expert's drug identification testimony although it was based on tests run by others. *Reardon v. Manson,* 806 F.2d 39 (2nd Cir.1986), *cert. denied sub nom. Reardon v. Lopes,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987). In so doing the Court noted that the tests run by others were primarily "mechanically objective in nature," i.e. they did not require any qualitative analysis on which the expert was then relying. *Id.* at 41. It also rejected the argument that a showing of unavailability was required before the testimony could be admitted. Citing *Roberts,* it found that "[t]he confrontation

---

7. The Supreme Court has subsequently rejected the argument that *Roberts* established a general rule requiring unavailability before any out of court statement was admissible. "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry *only* when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White v. Illinois,* 502 U.S. 346, 354, 112 S.Ct. 736, 741, 116 L.Ed.2d 848, 858 (1992) (statements fell under excited utterance and course of medical care exceptions to hearsay) (emphasis added). *See also United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (statements fell under co-conspirator exception to hearsay). Because neither *White* nor *Inadi* involved statements made in a prior judicial proceeding, the Court made an independent assessment of whether unavailability was required. In both cases the Court found it was not. One factor the Court focused on was the utility to the defendant of having a live witness for the purpose of cross-examination, a factor noted by *Roberts* itself. *See White,* 502 U.S. at 356, 112 S.Ct. at 743, 116 L.Ed.2d at 859. Whether the Confrontation Clause requires a showing of unavailability before an expert's testimony may be admitted when that expert bases his or her opinion on hearsay has not yet been specifically addressed by the Supreme Court. However, for the reasons stated in the course of this opinion, we find that unavailability was not required in this case.

clause is not necessarily violated by the prosecution's failure to produce a hearsay declarant for cross-examination at trial where the utility of trial confrontation would be remote and of little value to either the jury or the defendant." *Id.* (internal quotations omitted). Here, it based its finding of remote utility on the fact that the people who ran the tests would be most likely testifying from their notes and would not have an independent recollection of the tests performed. "Any testimony from the chemists bearing on the likelihood of error in the tests necessarily would have involved broad statements as to general practices and probabilities within the laboratory, matters concerning which [the expert] himself was well qualified to testify." *Id.* It also noted that the likelihood of a chemist admitting having made a mistake or having lied to the expert about results was very remote. *Id.* at 42. *See also Minner v. Kerby*, 30 F.3d 1311 (10th Cir.1994) (following *Reardon* in finding a showing of unavailability is not required).

Finally, the Court in *Reardon* noted that the defendants could have subpoenaed the chemists as their own witnesses. "[A]t least in those borderline cases where the likely utility of producing the witness is remote, the Sixth Amendment's guarantee of an opportunity for effective cross-examination is satisfied where the defendant himself had the opportunity to call the declarant as a witness." 806 F.2d at 42. "We think it entirely plain that petitioners chose not to subpoena the chemists who assisted [the expert] because they perceived, as we do, that the possibility of benefit from such testimony was remote and the more likely result would have been the corroboration of [the expert's] testimony." *Id.* at 43.[8]

---

8. Other cases have found no constitutional violation from the allowance of expert testimony under circumstances similar to the instant case. *See, e.g., Minner v. Kerby*, 30 F.3d 1311 (10th Cir.1994) (police chemist allowed to testify from unavailable witness's notes who actually performed toxicological tests); *United States v. Smith*, 964 F.2d 1221 (D.C.Cir.1992) (expert's opinion corroborating results of certain tests not performed by him admissible); *United States v. Lawson*, 653 F.2d 299 (7th Cir.1971), *cert. denied*, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982) (psychiatrist's opinion admissible although based almost entirely on reports made by others because defendant had access to hearsay evidence and could submit expert to cross-examination); *State v. King*, 187 Conn. 292, 445 A.2d 901 (1982) (reports of toxicological tests admissible although witnesses performing tests did not testify and no narcotics were left after testing; court noted defen-

In *Smith*, the defendant was convicted of bank, wire, and credit card fraud. 869 F.2d 348. Identity was the primary issue at trial. On appeal, the defendant challenged the testimony of a spectrographic voice expert who had identified her voice on taped telephone conversations to banks arranging financial transactions. She argued her rights under the confrontation clause were violated because the expert based his opinions on spectrograms prepared by another person who was unable to testify at the last minute. The Seventh Circuit Court of Appeals disagreed, noting that the defendant had access to the hearsay material and that the expert was rendering an independent opinion as opposed to merely acting as an "understudy" for the other person. *Id.* at 355.[9]

Applying these legal principles to the facts of this case, we find Appellant's right to confrontation was not violated. We adopt the reasoning of the above cases in finding the state did not have to show Agent Christy was unavailable before Agent Counts's testimony could be admitted. The likelihood of the utility of Agent Christy's testimony to Appellant's defense is very remote. Appellant admitted he had the means of calling

dant could have subpoenaed chemists if she had any doubts about the tests' reliability); *State v. Jones*, 322 N.C. 406, 368 S.E.2d 844 (1988) (testifying expert's statement that he based his opinion, finding fingerprint match between defendant's prints and those found at crime scene, in part on the opinion of a nontestifying expert was properly admitted); *State v. Stevens*, 136 N.J.Super. 262, 345 A.2d 804 (App.Div.1975) (allowing expert to testify about results of tests performed on evidence by another person); *Gordon v. Brown*, 84 N.Y.2d 574, 620 N.Y.S.2d 749, 751, 644 N.E.2d 1305, 1307 (1994) (in administrative hearing on charges of police officer's drug use, officer did not have right to cross-examine every lab technician who tested evidence to try to uncover "possible human error"; court noted he could have called technicians himself, he did not dispute general reliability of testing procedures used, nor did he allege any particular error in the handling of evidence); *Evans v. State*, 480 S.W.2d 387 (Tex.Crim.App.1972) (pathologist's expert opinion regarding victim's cause of death admissible although based on autopsy performed by another nontestifying person); *Grant v. State*, 472 S.W.2d 531 (Tex.Crim.App.1971) (doctor's testimony about results of tests run on evidence by others in laboratory admissible; the fact that he did not see tests performed, actual evidence was never returned to him, and there was no information given regarding possibility of error in laboratory went only to weight given the testimony).

**9.** Significantly, *Smith* did not address the unavailability issue.

Agent Christy himself if he thought the method by which the latent print was produced was unreliable. Agent Counts was not relying on any subjective opinion of Agent Christy; Counts's opinion regarding whether a match existed was totally his own. Furthermore, Agent Counts was thoroughly cross-examined regarding his reliance on Agent Christy's work. Agent Christy's involvement only extended to placing a chemical on the card to raise an already existing print, which does not require any subjective analysis but is mechanical.

■ Appellant argues there was no evidence regarding the reliability of Agent Christy's report.[10] We disagree. Initially, this evidence falls within a firmly-rooted hearsay exception and thus reliability can be inferred. *See Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. As the Fifth Circuit Court of Appeals has noted, "Expert witness testimony is a widely-recognized exception to the rule against hearsay testimony." *Williams*, 447 F.2d at 1290.

> The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion. Moreover, the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise.

*Id.* Agent Counts's testimony was that the inhydrant process was universally used to develop latent prints and every SLED

---

10. We note that the reliability required by the rules of evidence is described as reasonable reliance by other experts in the field. *See Franklin*, 318 S.C. at 57, 456 S.E.2d at 363. Under *Roberts*, the Confrontation Clause requires "adequate indicia of reliability." 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. We need not decide whether these two standards are coextensive, for we find sufficient reliability here to meet both. *See State v. Jones*, 322 N.C. 406, 368 S.E.2d 844, 847 (1988) (evidentiary rule requiring facts or data "be of a type reasonably relied upon by experts in the particular field" is consistent with law requiring evidence to be "inherently reliable").

agent was trained and practiced that procedure. Agent Christy processed the card and prepared his report with the knowledge that it would be examined by at least one other trained expert—possibly more if there were any doubt of its accuracy. *See Minner*, 30 F.3d at 1315 (reliability of hearsay found in the fact that chemist running tests and making report knew they would be examined by relying expert); *Reardon*, 806 F.2d at 43 (finding of reliability in part based on the fact that chemists running tests knew their work would be examined by testifying expert). Appellant does not argue that this is not the type of work reasonably relied upon by experts in this field, nor could he reasonably do so. *See Smith*, 964 F.2d at 1223 (D.C.1992) (quantitative analysis, chromatograms and infrared spectrograph of suspected drug evidence, prepared by analyzing chemist, are the kinds of evidence a forensic chemist would reasonably rely on in forming opinion regarding substance composition). Therefore, under the circumstances of this case, we find no error in the trial judge's admission of the expert testimony. Appellant's conviction is

AFFIRMED.

TOAL, Acting C.J., and MOORE and BURNETT, JJ., concur.

FINNEY, C.J., not participating.