523 S.E.2d 173

**The STATE, Respondent,**

v.

**Moses Abdul DENNIS, Appellant.**

**No. 25022.**

Supreme Court of South Carolina.

Heard March 3, 1999.

Decided Nov. 22, 1999.

276

278

Assistant Appellate Defender Aileen P. Clare of the South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, and Solicitor David P. Schwacke of North Charleston, for respondent.

WALLER, Justice:

Moses Abdul Dennis (appellant) was convicted of murder and sentenced to life in prison. We affirm.

## FACTS

The State accused appellant and his younger brother, Moses Otis Dennis (Otis), of murdering Terrance Johnson (victim) in September 1995. Appellant, Otis, and a third man fought with the victim in the early morning hours in the street outside an apartment complex in Charleston. The fight ended when the victim was shot once in the head. Appellant defended himself at his first trial in December 1996 by calling witnesses who accused his brother of shooting the victim. That case ended in a mistrial.

The State placed the brothers on trial together in July 1997. The only physical evidence connecting either appellant or his brother to the crime was appellant's palm print on the trunk of a borrowed car he had driven to the scene. The State called three alleged eyewitnesses. Two witnesses testified they heard the gunshot, turned, and saw appellant either pointing a handgun at the victim or standing over the victim holding a gun. One witness testified that the third man who participated in the fight, while looking at appellant, said, "[D]amn, Mose, you shot him." The State's final eyewitness testified she saw appellant and Otis fighting with the victim and heard the gunshot, but did not see appellant standing over the victim with a gun.

A police officer testified she saw appellant, whom she knew, walking away from the crime scene. Appellant was sweating noticeably when she approached him, and he said someone had told him the victim had been shot. Appellant repeatedly asked the officer whether the victim was dead.

Appellant called three alleged eyewitnesses in his defense. The first witness testified she saw appellant begin fighting

with the victim, but said that Otis—not appellant—shot the victim after returning to the scene from the nearby apartments. The second witness, Bernard Horlback, testified he did not see the fight, but heard the gunshot and turned to see the victim lying on the ground. One to two minutes later, Horlback saw Otis tucking a gun beneath his shirt as he walked between apartment buildings. Otis told him that appellant shot the victim, Horlback testified. Horlback conceded appellant could have shot the victim, then handed Otis the gun. Appellant's third witness testified appellant and the victim fought in the street. The witness heard the gunshot, but claimed he did not remember what happened because he was "high" from smoking marijuana.

Neither appellant nor Otis testified. The jury convicted appellant of murder and found Otis not guilty.

## ISSUES

1. Did the trial judge err in denying appellant's pretrial severance motion?
2. Did the trial judge err in denying appellant's mistrial motion under *Bruton v. United States* [1] after jurors heard testimony about an excited utterance made by a codefendant?

## DISCUSSION

### 1. PRETRIAL SEVERANCE MOTION

■ Appellant contends the trial judge, relying in part upon *Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), erred in denying his pretrial severance motion. We disagree.

Otis and appellant in a pretrial motion asked the judge to sever the trials. They argued that appellant's previous mistrial indisputably demonstrated the mutually antagonistic nature of their defenses, which meant a joint trial would compromise their right to a fair trial.

The judge denied the motion, ruling that the fact that such a defense *actually* arose in appellant's previous trial—as com-

---

1. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

pared with the typical case in which such a defense is *expected* to arise—did not change the analysis. The judge concluded that the existence of mutually antagonistic defenses did not require severance, and appellant had not shown that a joint trial would violate any specific trial right. The judge gave the jury cautionary instructions in his opening comments and at the end of the trial.[2]

Criminal defendants who are jointly tried for murder are not entitled to separate trials as a matter of right. *State v. Kelsey,* 331 S.C. 50, 73–74, 502 S.E.2d 63, 75 (1998); *State v. Holland,* 261 S.C. 488, 201 S.E.2d 118 (1973); *State v. Crowe,* 258 S.C. 258, 188 S.E.2d 379 (1972). A defendant who alleges he was improperly tried jointly must show prejudice before this Court will reverse his conviction. *State v. Crowe, supra.* The general rule allowing joint trials applies with equal force when a defendant's severance motion is based upon the likelihood he and a codefendant will present mutually antagonistic defenses, i.e., accuse one another of committing the crime. *State v. Leonard,* 287 S.C. 462, 473, 339 S.E.2d 159, 165 (Ct.App.1986), *reversed on other grounds,* 292 S.C. 133, 355 S.E.2d 270 (1987).

The trial judge, however, must act cautiously in allowing a joint trial. The judge must carefully consider

---

2. Before testimony began, the judge told jurors:

Now, as you may have heard during the jury selection process, there are two Defendants in this case charged in separate indictments. You must consider each charge separately, and you must decide separately whether each individual Defendant is guilty or not guilty of each charge alleged by the indictment. It is your duty to give such consideration to each individual Defendant on each separate charge alleged in the indictment. You must therefore consider separately the evidence and the law for each individual Defendant for each charge and write your verdict accordingly.

At the end of the trial, the judge told jurors:

As you are aware, there are two Defendants in this case, and each Defendant is charged with one count of murder. Whatever verdict you find does not have to be the same as to all Defendants. You take each Defendant and consider the evidence as to that Defendant alone, and write your verdict accordingly, in conformity with the evidence in the case and the instructions which I have given to you. Where more than one person is charged with a crime, you may convict one and acquit the other if the evidence warrants it, or you may acquit both or you may convict both. It will depend upon your view of the testimony and the evidence which you alone can act upon.

problems that may arise from a joint trial, such as redacted statements, and must assure protection of each defendant's constitutional right to confront witnesses against him. *State v. Singleton,* 303 S.C. 313, 315, 400 S.E.2d 487, 488 (1991). A proper cautionary instruction may help protect the individual rights of each defendant and ensure that no prejudice results from a joint trial. *State v. Holland,* 261 S.C. at 494, 201 S.E.2d at 121.

Motions for a severance and separate trial are addressed to the discretion of the trial court. *State v. Nichols,* 325 S.C. 111, 481 S.E.2d 118 (1997); *State v. Chaffee,* 285 S.C. 21, 328 S.E.2d 464 (1984), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). Absent a showing of an abuse of discretion, this Court will not disturb the trial court's ruling on appeal. *State v. Nelson,* 273 S.C. 380, 256 S.E.2d 420 (1979).

In *Zafiro v. United States, supra,* the United States Supreme Court held that Rule 14 of the Federal Rules of Criminal Procedure does not require severance as a matter of law when codefendants present mutually antagonistic defenses. The Supreme Court noted it repeatedly has approved of joint trials. The Supreme Court held that severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a codefendant or prevent the jury from making a reliable judgment about a codefendant's guilt. The Supreme Court left the decision to the sound discretion of the district court. *Id.* at 537–41, 113 S.Ct. at 937–39, 122 L.Ed.2d at 323–26.

The principles espoused in *Zafiro* are consistent with this Court's precedent. Therefore, we hold the trial judge did not err in relying upon *Zafiro.*

We further hold the judge did not abuse his discretion in denying appellant's pretrial motion to sever the joint trial. The State alleged that both defendants participated in the murder of the victim. We agree with the judge that the fact appellant in his first trial *actually* called witnesses who accused his younger brother of shooting the victim does not change the analysis. Neither appellant nor Otis pointed to any specific trial right that would be prejudiced by a joint trial. Furthermore, the judge gave a cautionary instruction

before testimony began and in his closing charge. The instructions were similar to those described approvingly by the Supreme Court. *Zafiro,* 506 U.S. at 541, 113 S.Ct. at 939, 122 L.Ed.2d at 326. Jurors obviously were able to follow those instructions, as they found appellant guilty and his brother not guilty.

## 2. EXCITED UTTERANCE EXCEPTION AND *BRUTON* DOCTRINE

Appellant contends the trial judge erred in denying his mistrial motion on the grounds that the statement at issue was not an excited utterance, and that it was inadmissible under the *Bruton* doctrine. We disagree.

## A. EXCITED UTTERANCE EXCEPTION

While cross-examining eyewitness Horlback, the prosecutor elicited the following testimony:

Q. When you saw—I'm going to call him Moses Otis Dennis—when you saw Moses Otis Dennis, that was real shortly after the shooting, wasn't it?

A. Yes, sir.

Q. You all were still all excited and everything, weren't you?

A. Yes, sir.

Q. And [Otis] told you that his brother had shot [the victim] because [the victim] had taken a swing at his brother?

A. Uh huh.

Q. He said that, didn't he?

A. Yes, sir.

Appellant argues the State did not establish the statement in question was an excited utterance that was admissible under Rule 803(2), SCRE.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condi-

tion." Rule 803(2), SCRE. A statement that is admissible because it is "not hearsay" under Rule 801(d), SCRE, or because it falls within an exception in Rule 803, SCRE, may be used substantively, i.e., to prove the truth of the matter asserted. *Simpkins v. State*, 303 S.C. 364, 401 S.E.2d 142 (1991); 2 *McCormick on Evidence*, §§ 251, 254 (1992); C.B. Mueller & L.C. Kirkpatrick, *Modern Evidence—Doctrine and Practice*, § 8.24 (1995).

The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, reducing the likelihood of fabrication. In determining whether a statement falls within the excited utterance exception, a court must consider the totality of the circumstances. *State v. Hill*, 331 S.C. 94, 99, 501 S.E.2d 122, 125, *cert. denied*, 525 U.S. 1043, 119 S.Ct. 597, 142 L.Ed.2d 539 (1998).

Appellant's argument that the State failed to show the statement was an excited utterance argument is unpersuasive. Otis allegedly had just seen his brother shoot an unarmed man, abruptly ending a fistfight. Horlback testified Otis made the statement to him when he saw Otis one to two minutes after the shooting, tucking a gun beneath his shirt as he walked between apartment buildings. The statement was an excited utterance admissible under Rule 803(2), SCRE. *Accord State v. Burdette*, 335 S.C. 34, 41–44, 515 S.E.2d 525, 529–30 (1999) (victim's statement to police less than one hour after attack was an excited utterance).

## B. *BRUTON* DOCTRINE

Appellant next contends the trial judge should have granted his mistrial motion because he was denied his right to confront Otis about the statement in violation of the Sixth Amendment's Confrontation Clause, citing *Bruton v. United States, supra*. We have not previously addressed a case in which an appellant alleged a statement, even if admissible as an excited utterance, is nonetheless barred by the Confrontation Clause.

In *Bruton*, the Supreme Court held that a defendant's rights under the Confrontation Clause of the Sixth Amend-

ment[3] are violated by the admission of a non-testifying code-fendant's confession that inculpates a defendant, even if a cautionary instruction is given. *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622, 20 L.Ed.2d at 479; *State v. Evans*, 316 S.C. 303, 307, 450 S.E.2d 47, 50 (1994). The Supreme Court recognized that the

> truthfinding function of the Confrontation Clause is jeopardized when an accomplice's confession is introduced against a defendant without the benefit of cross-examination. The danger emanating from a denial of the right to confront and cross-examine a witness is that an accomplice's statements are often unreliable and must, therefore, be viewed with suspicion because of the likelihood of an accomplice's desire to exonerate himself by implicating others.

*State v. Martin*, 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987) (citing *Bruton* ). Thus, *Bruton* is grounded in two concerns: a defendant's constitutional right to cross-examine his accusers and the inherent unreliability of statements made by a defendant who stands to gain by shifting blame to a codefendant.

The Supreme Court, however, emphasized that the hearsay statement inculpating Bruton was not admissible against him under traditional rules of evidence. The Supreme Court expressed no opinion on whether the admission in a joint trial of evidence properly admissible under an established hearsay exception would violate the Confrontation Clause. *Bruton*, 391 U.S. at 128 n. 3, 88 S.Ct. at 1623 n. 3, 20 L.Ed.2d at 480 n. 3.

The Supreme Court consistently has held that the Confrontation Clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho v. Wright*, 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638, 651 (1990). Although the Supreme Court has recognized that "hearsay

---

**3.** "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. The provision is applicable to the states under the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The South Carolina constitution provides the same protection to a defendant. S.C. Const. art. I, § 14.

rules and the Confrontation Clause are generally designed to protect similar values, [it] also has been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements." *Id.* at 814, 110 S.Ct. at 3146, 111 L.Ed.2d at 651 (citing *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

 An incriminating statement admissible under an exception to the hearsay rule also is admissible under the Confrontation Clause only if it bears adequate "indicia of reliability." The indicia of reliability requirement is met when the hearsay statement falls within a firmly rooted hearsay exception.[4] *Id.* at 814–16, 110 S.Ct. at 3146–47, 111 L.Ed.2d at 652–53.

---

4. In *Idaho v. Wright*, the Supreme Court, citing *Ohio v. Roberts, supra,* stated the first step in determining whether an incriminating statement admissible under an exception to the hearsay rule also is admissible under the Confrontation Clause was that the State must either produce, or demonstrate the unavailability of, a declarant whose statement it wished to use against the defendant. *Id.* at 814, 110 S.Ct. at 3146, 111 L.Ed.2d at 651. The Supreme Court has clarified that view, stating "the unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding," as they were in *Ohio v. Roberts. White v. Illinois,* 502 U.S. 346, 353–56, 112 S.Ct. 736, 741–42, 116 L.Ed.2d 848, 857 (1992); *see also United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (Confrontation Clause does not require showing of unavailability as condition to admission of out-of-court statement of nontestifying co-conspirator that is admissible under Federal Rules of Evidence); *State v. Hutto,* 325 S.C. 221, 226 n. 7, 481 S.E.2d 432, 434 n. 7 (1997) (recognizing the clarification).

The Supreme Court also has held that a hearsay statement may be deemed sufficiently reliable to avoid violating the Confrontation Clause when it is supported by a showing of particularized guarantees of trustworthiness. The second method of determining reliability appears to be grounded, at least in part, in the residual or catchall hearsay exception found in Federal Rule of Evidence 807 (formerly Rule 803(24), FRE) and in some states' rules of evidence. *See Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 1901–02, 144 L.Ed.2d 117, 136–38 (1999) (explaining that analysis Supreme Court uses today closely links Confrontation Clause, which has ancient origins, to modern hearsay rules) (Breyer, J., concurring); *Idaho v. Wright,* 497 U.S. at 816–27, 110 S.Ct. at 3147–53, 111 L.Ed.2d at 652–60 (affirming Idaho Supreme Court's decision that, although a statement fell within Idaho's catchall hearsay exception, admitting it would violate Confrontation Clause because it lacked sufficient particularized guarantees of trustworthiness); *Ohio v. Roberts,* 448 U.S. at 66 & n. 9, 100 S.Ct. at 2539 & n. 9, 65 L.Ed.2d at 608 & n. 9 (describing the two methods of determining

The Supreme Court has held that an excited utterance, or spontaneous declaration, is one such firmly rooted exception to the hearsay rule, and its admission does not violate the Confrontation Clause. *White v. Illinois,* 502 U.S. 346, 357, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 860 (1992). The excited utterance exception has existed for at least two centuries. *Id.* at 355 n. 8, 112 S.Ct. at 742 n. 8, 116 L.Ed.2d at 859 n. 8.

> [T]he evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations ... is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness.... A statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom....
>
> To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, given that the Confrontation Clause has as a basic purpose the promotion of the integrity of the factfinding process.... [A] statement that qualifies for admission under a firmly rooted hearsay exception is so trustworthy that adversarial testing [by cross-examination] can be expected to add little to its reliability.

*Id.* at 355–57, 112 S.Ct. at 742–43, 116 L.Ed.2d at 859–60 (internal quotes omitted).

Although *White v. Illinois* did not raise a *Bruton* issue because only one defendant was on trial, we believe the principles and logic of the decision apply with equal force in appellant's case. A federal appellate court concluded the same in a case factually similar to appellant's seventeen years before the Supreme Court decided *White v. Illinois.* In *McLaughlin v. Vinzant,* 522 F.2d 448 (1st Cir.1975), the

---

the reliability of a statement, and noting complexity of reconciling hearsay rules and Confrontation Clause).

Unlike the rules in the federal system and in other states, the South Carolina Rules of Evidence do not contain the residual or catchall hearsay exception. *See* Notes to Rule 803, SCRE. We express no opinion on the second method of determining reliability because it is not at issue in this case.

defendant and his female companion were tried jointly, he for murder and she as an accessory. Three witnesses testified the female companion ran back to an apartment the couple had left, about one minute after the witnesses heard a gunshot, and said the defendant had just "shot someone." The First Circuit upheld the admission of the excited utterance and found no *Bruton* violation. *Id.* at 449–50; *accord United States v. Vazquez*, 857 F.2d 857, 864 (1st Cir.1988) (finding no *Bruton* violation in the admission of a customs official's testimony in a joint trial about a codefendant's excited utterance implicating defendant, which was made when authorities detained the two men).

We hold that Otis's excited utterance, as repeated to the jury by eyewitness Horlback, is not barred by the Confrontation Clause. Otis allegedly made the statement one to two minutes after purportedly seeing his brother fatally shoot an unarmed man. Its spontaneous nature ensures its reliability without the need for cross-examination. An excited utterance differs markedly from a statement or confession a codefendant makes to an investigator after having had time to collect his or her thoughts, time enough perhaps to concoct a story identifying an accomplice as the perpetrator. Otis's statement falls within a firmly rooted exception to the hearsay rule and consequently does not violate the Confrontation Clause. *White v. Illinois, supra; accord State v. Burdette,* 335 S.C. at 44–45, 515 S.E.2d at 530–31 (holding that admission of an excited utterance made by a victim to police did not violate the Confrontation Clause because the excited utterance exception is a firmly rooted hearsay exception) (citing *White v. Illinois, supra*).

Our holding is consistent with *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), a recent case in which the Supreme Court considered the *Bruton* doctrine, the Confrontation Clause, and firmly rooted hearsay exceptions. In *Lilly,* a Virginia trial court admitted a nontestifying codefendant's confession to police that implicated his defendant brother as evidence against the defendant brother. The Virginia Supreme Court held that the codefendant's custodial confession was a statement against his penal interest and, because that qualifies as a firmly rooted hearsay exception under Virginia law, admitting the codefendant's confession did not

violate the defendant brother's Confrontation Clause rights. *Lilly*, 527 U.S. at 121–23, 119 S.Ct. at 1893, 144 L.Ed.2d at 125.

A plurality of the Supreme Court reversed, holding that an accomplice's custodial confession that inculpates a codefendant is not within a firmly rooted hearsay exception. *Id.* at 132–35 & n. 5, 119 S.Ct. at 1898–99 & n. 5, 144 L.Ed.2d at 133 & n. 5. The dissenters found the plurality's analysis and holding unnecessarily broad. The plurality, concurring, and dissenting justices, however, all appear to support the continued vitality of the *Bruton* doctrine. Furthermore, nothing in any of the opinions disturbs the principle that a nontestifying codefendant's statement which is deemed reliable because it falls within a firmly rooted hearsay exception may be admitted without violating the Confrontation Clause.[5]

## CONCLUSION

We affirm the trial judge's denial of appellant's pretrial severance motion and conclude the judge did not err in relying upon *Zafiro v. United States, supra.* We affirm the denial of appellant's mistrial motion because the admission of the excited utterance of a codefendant did not violate appellant's rights under the Confrontation Clause and *Bruton v. United States, supra.*

AFFIRMED.

TOAL, MOORE and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent. The State chose to try appellant and his brother jointly for the murder of Terrance Johnson, and therefore elected to subject itself to the special evidentiary considerations which arise in such situations. *See State v. Singleton*, 303 S.C. 313, 400 S.E.2d 487 (1991) (admonishing trial judges to exercise caution in joint trials, especially to

---

5. The Virginia courts and the Supreme Court also addressed the second method of determining the reliability of a statement, i.e., whether the statement contains sufficient particularized guarantees of trustworthiness. Again, our opinion does not address that method. *See* footnote 4.

ensure protection of Confrontation Clause rights); *State v. Bellamy*, 293 S.C. 103, 359 S.E.2d 63 (1987) (urging "state to carefully consider all the available alternatives before deciding to try co-defendants jointly...."). In my opinion, the admission of Otis' statement to Horlback that appellant shot Johnson is the quintessential Confrontation Clause violation.

The majority holds that the brother's "excited utterance", inculpating only the appellant, made only one to two minutes after the shooting, and made to a witness who observed the brother leaving the scene while attempting to secrete the murder weapon, is so inherently reliable that its admission is constitutionally permissible. The suggestion that this statement is reliable because the brother did not have time to concoct a blame-shifting story is naive, as is any assertion that the context in which the statement was made provides a substantial guarantee of its trustworthiness. To characterize all 'excited utterances' as 'firmly rooted' hearsay exceptions exempt from the strictures of the Confrontation Clause is an oversimplification similar to that made by the Virginia Supreme Court and criticized by the United States Supreme Court in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). In the *Lilly* plurality opinion, the Court explicitly reiterated, "It is clear that our cases consistently have viewed an accomplice's statements that shift or spread blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability."' 527 U.S. at 133, 119 S.Ct. at 1898 (internal citation omitted).

While the issue raised in this appeal was left open by the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 128 n. 3, 88 S.Ct. 1620, 1623 n. 3, 20 L.Ed.2d 476, 480 n. 3 (1968), nothing in subsequent decisions by that Court persuades me that the type of statement at issue here would ever be deemed admissible in a joint trial. I would reverse appellant's conviction.