138 N.J. Super. 103 (1975)
350 A.2d 274
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL SANDS AND FRANK SHELDRICK, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 3, 1975.
Decided December 17, 1975.
*105 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellants (Mr. Harvey I. Marcus on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Ms. Lois De Julio, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
A jury found defendant Paul Sands guilty of second degree murder and defendant Frank Sheldrick guilty of first degree murder in connection with the death of one William White. Each was also found guilty of the illegal possession of a firearm, and Sheldrick, additionally, was convicted of assault with an offensive weapon and threatening the life of another. Both appeal.
*106 The State's proofs indicated that there had been some trouble between decedent and defendants, apparently because they believed he had "ratted" on them to the police. During the night of August 6/7, 1973 defendants were in the Vesuvius Bar in West New York, a tavern operated by decedent's father-in-law. They went into the back room of the tavern, where they began to play pool with decedent. Mrs. White observed Sheldrick remove from his pocket a sawed-off shotgun, which he pointed at her. When she remonstrated, he broke open the weapon and removed the shell. Sands took three shells from his pocket and placed them on the table. Sheldrick then inserted one of those shells into the shotgun. Shortly thereafter, while she was at the cash register, Mrs. White saw defendant draw a gun, aim it at her husband, and fire. Decedent leaped into the air and fell to the floor.
Police officers on routine patrol in the area heard a gunshot and observed smoke coming from the inside of the bar. A man, later identified as defendant Sands, emerged from the premises. The police saw him throw a weapon into a nearby alley. They placed him under arrest and then entered the tavern, where they apprehended Sheldrick as he was leaving the room with a sawed-off shotgun in his hand. Decedent's body lay on the floor. A subsequent autopsy revealed that death had resulted from a gunshot wound of the lower abdomen which had ruptured vital blood vessels, the intestines and the bladder.
Defendants argue, initially, that the trial judge, over objection, erroneously permitted the decedent's wife to testify to what he said to her moments after the fatal wound was inflicted. They contend that the statements were made "after an opportunity to deliberate and fabricate and was interspersed with other statements indicating a lack of nervous excitement." We find no merit in these assertions.
Mrs. White's testimony was heard by the trial judge in a preliminary inquiry outside the presence of the jury, pursuant to Evid. R. 8(1). She said that when she heard the *107 shot she ran over to her husband and asked, "Billy, are you all right?" He replied, "Get them out of here. Just get him out of here." He then requested her to call for an ambulance. She further testified as follows:
Q. And after he said that [the request for the ambulance] did he make any other statement? A. Yes. He told me, he said his, he said his ass felt on fire and he said give me a drink of beer before I die.
Q. And prior to his saying that did he indicate anything else as to what had happened? A. He had said he shot me.
Q. And after he said he shot me? A. He said it twice.
Q. He said he shot me twice. A. Yes.
Q. And this was seconds after the shot had gone off or after you heard the shot? A. Yes.
The trial judge found, with support in the proofs, that the declarant was under the stress of a nervous excitement due to the wound, that the statement was uttered in reasonable proximity to his being shot, and that there was no opportunity for him to deliberate or fabricate. He correctly ruled that the testimony was admissible. See Evid. R. 63 (4) (b). The fact that the statements may have been made in response to inquiry "[did not] remove its spontaneous nature within the contemplation of the doctrine [of res gestae]." State v. Simmons, 52 N.J. 538, 542 (1968).
Defendants next contend that "certain actions of the assistant prosecutor were so prejudicial as to preclude a fair trial." They complain that when the trial judge gave the jury a supplemental charge on the defense of misadventure, the assistant prosecutor expressed his displeasure by "making all kinds of gyrations and faces." The trial judge remarked, in response to counsel's objection, that "there were gestures and postures and expressions on your [the assistant prosecutor's] face of dissent * * * which were obvious to me and which must have been obvious to the jury," but he did not consider that the conduct detracted from the force of the charge. However, the jury was not given a curative instruction and none was requested. Such an instruction *108 would have been appropriate, but defendants do not argue that the omission was error. While we have no doubt that the assistant prosecutor's conduct was improper, we are convinced that the infraction did not substantially prejudice defendants' right to a fair trial. State v. Bucanis, 26 N.J. 45, 56 (1958).
We reach a like result with respect to defendants' objection to a remark made by the assistant prosecutor during his interrogation of decedent's wife, and to the trial judge's denial of their motion for a mistrial. Specifically, the words were, "I wonder," indicating disbelief in the testimony. The trial judge immediately and forcefully instructed the jury to disregard the comment. It was clearly uncalled for, but whatever harm might have resulted was completely dissipated by the strongly worded curative instruction.
A contention separately advanced by defendant Sheldrick is that the trial judge erred in permitting testimony regarding his prior criminal convictions. We observe parenthetically that his brief fails to indicate that the point is raised for the first time on appeal. See R. 2:6-2(a). Furthermore, while he states that the judge erred "in not granting the defendant's motion to limit the discussion of the defendant, Sheldrick's prior convictions," we cannot locate such motion in the transcript.
In any case, the argument is specious. When Sheldrick took the stand and testified in his own behalf, the assistant prosecutor properly cross-examined him on his prior convictions for the purpose of affecting his credibility. N.J.S.A. 2A:81-12. Moreover, the convictions were first elicited by defense counsel on his direct examination. We are urged to declare unconstitutional the statute permitting such inquiry by the prosecution. Defendant says that the "time has come for the New Jersey Supreme Court to reconsider its position in the case of State v. Hawthorne [49 N.J. 130 (1967)]." We suggest that those arguments should be *109 addressed to that court, not to us. See State v. Steffanelli, 133 N.J. Super. 512, 514 (App. Div. 1975).
Defendant Sands complains that because the assistant prosecutor commented on Sheldrick's testimony while summing up, this "high-lighted" the fact that he did not testify. The contention is frivolous. We have carefully reviewed the summation and find nothing prejudicial therein.
Another assignment of error is that the trial judge failed to submit to the jury the issue of manslaughter, as requested. The proofs in this case did not warrant such charge. Cf. State v. Gosser, 50 N.J. 438, 453-454 (1967), cert. den. 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1968); State v. Trantino, 44 N.J. 358, 370 (1965), cert. den. 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966). Sheldrick testified that the decedent had aimed his own gun at him and that the gun accidentally discharged as Sheldrick attempted to push the barrel of the weapon towards the floor. Thus, the defense asserted was death by misadventure. The trial judge fully instructed the jury on the principles of law pertaining to that issue.
We turn now to the argument advanced by defendant Sheldrick that the trial judge's refusal to accept pleas of non vult resulted in his "suffering additional consecutive sentences." The contention is that the trial judge would not accept the pleas unless defendants admitted their guilt factually, which they were not willing to do. Defendant misconstrues what actually occurred.
At the opening of the trial, with the acquiescence of the assistant prosecutor, Sheldrick's attorney announced to the court in camera, but on the record, that a plea bargain had been discussed whereby defendants would plead non vult to murder and the remaining charges would be dismissed. He said, further, that, although they had been advised against entering such plea, defendants had indicated a desire "to accept that plea," mainly because "it appeared the State's case is too strong." He stated:
*110 * * * We then discussed with the defendants his [sic] various rights and he understood them all. Each defendant then, we said, there would come a time in the proceedings in attempting to plead guilty where the Judge would ask him tell me what happened on that particular night and I asked him what he would tell and he said that he would tell the same thing that he had previously told Mr. De Geronimo and I. I said to him that in my opinion that would not satisfy a factual basis, that the Court could accept a guilty on that in this State. It was required a man, if he wants to plead guilty, he must also admit facts that will justify a guilty plea. Regardless of the State's file, he indicated to me he intended to maintain his story before the Court in this proceeding in a similar manner. * * * The purpose of all these statements is to put on the record that this has been mentioned by the defendants; its been offered to the Court, but in our opinion there is no factual basis presently being given by the defendants that would justify to support them. [Emphasis supplied]
Sands' attorney concurred in the statement of his colleague and confirmed that his client could not offer a factual basis for the plea. He requested that Sands be permitted "to enter a plea of guilty and stand mute as to answering any questions tendered by the Court."
It appears that defendants were then brought into chambers and the discussion continued in their presence after the court reporter read back for their benefit what had transpired up to that point. Each defendant indicated through counsel that he understood.
The trial judge remarked that under the rules a defendant could not "merely come in and say I offer the Court a plea of guilty and say nothing more." The court, he said, was required to interrogate the defendant personally, and "may interrogate others in his discretion * * * where he thinks the defendant may be pleading guilty to avoid a trial and possibly other complications that might arise from the trial where he may feel himself innocent * * *." He would not permit a defendant to plead guilty and then remain mute. A plea of non vult to the murder charge, he said,
* * * must be accompanied by a statement by them to me of facts which I would propose to compare with the evidence that the prosecutor *111 is about to offer, if I thought it necessary. Facts which would constitute the commission by them of the crime of murder. If it did not measure up to the crime of murder I would be obliged, of course, to decline to accept a plea of guilty. I would reject it. Now, both of you gentlemen who are experienced criminal lawyers in this Court and others, have assured me its your professional opinion that the facts as told to you by your clients would not measure up to the standard of the crime of murder. Therefore, if these facts were told from you by the defendant [sic] I would reject their plea. [Emphasis supplied.]
The trial judge concluded by stating:
Therefore, on your representation, gentlemen, that professionally judging the matter you feel that the statements that your clients would give to me would not adequately support non vult plea as a factual basis, I'm just going to say that I don't believe we should enter into any futile plea proceedings here. * * * *
We should at the outset express our disapproval of the in camera conference that took place here. It seems to us that the offering of a plea of non vult or guilty, as the case may be, is a determination that a defendant must make himself after consultation with his attorney. If, despite contrary legal advice, he persists in his desire to offer the plea, he should be accorded the opportunity to do so. Cf. State v. Piracci, 14 N.J. Super. 319, 323 (App. Div. 1951). Of course, the judge in his discretion need not accept the plea, and may not accept it without complying with the requirements of R. 3:9-2. But we deem inappropriate the manner in which the matter was presented in this case, particularly since it placed the trial judge in the position of giving, in effect, advisory or anticipatory opinions on the problems raised. The better practice, we think, would have been for the trial judge simply to have left it to defendants to decide whether to offer the non vult pleas and, if and when they did, to accept or reject them after making the requisite inquiries.
However, we perceive no prejudice to defendants from what transpired here, since it is clear that the pleas should *112 not have been accepted in any case. Obviously, Sands could not be permitted to plead and then remain mute. As for defendants' admitting their guilt, we see no need to consider the correctness of defendants' concept that the trial judge could not require them to disclose facts evidencing their guilt of the offenses charged before accepting the plea, and that it is sufficient if the factual basis therefor appears by inquiry of others. Counsels' representation to the court, in the presence of and without contradiction by defendants, was that the facts related to them by defendants would not provide the necessary factual basis for the plea. It thus appears beyond question that both defendants wished to plead non vult while still maintaining their innocence of the charges. This they cannot do. Cf. State v. Reali, 26 N.J. 222, 224 (1958).
The judgments of conviction are affirmed.