266 N.J. Super. 406 (1993)
629 A.2d 1362
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LARRY SEGO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 23, 1993.
Decided July 29, 1993.
*407 Before Judges ANTELL, DREIER and SKILLMAN.
Zulima V. Farber, Public Defender, attorney for appellant (Judith A. Fallat, Designated Counsel, of counsel and on the brief).
*408 Stephen G. Raymond, Burlington County Prosecutor, attorney for respondent (Deborah A. Siegrist, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to decide whether an alleged accomplice's out-of-court statement inculpating defendant, which the Confrontation Clause of the Sixth Amendment would preclude the State from introducing as substantive evidence, may be used for the purpose of impeaching the alleged accomplice's subsequent out-of-court statement exculpating defendant.
A jury found defendant guilty of knowing murder, in violation of N.J.S.A. 2C:11-3a(1) or (2), two counts of first degree robbery, in violation of N.J.S.A. 2C:15-1a(1), second degree burglary, in violation of N.J.S.A. 2C:18-2b(1), and fourth degree theft by unlawful taking, in violation of N.J.S.A. 2C:20-3a. The jury also acquitted defendant of purposeful murder, one count of first degree robbery and one count of second degree burglary. The court sentenced defendant to a 40 year term of imprisonment, with 30 years of parole ineligibility, for murder, and concurrent terms of four years imprisonment for burglary and nine months imprisonment for theft. The court merged defendant's robbery convictions into his conviction for murder.
The State's evidence showed that defendant, who was then 16 years old, committed the murder jointly with Donald Slover, an 18 year old, who was tried separately. The victim was Martin Vinson, who lived in an old school bus parked in a Woodland Township junkyard where he worked. After consuming a substantial amount of alcoholic beverages, defendant and Slover went to the junkyard during the early morning hours of August 2, 1988 to rob Vinson. The two young men entered Vinson's school bus and struck him with multiple blows on the head, with defendant wielding a metal pipe and Slover a flashlight in the attack. These blows crushed Vinson's skull and caused his death.
*409 The most damaging testimony against defendant was given by his friend, Stephen DeFrank. According to DeFrank, defendant came to his house during the late morning of August 2, 1988, and said that he and Slover had just killed Vinson. Defendant told DeFrank that they had decided to rob Vinson because he owed Slover money. When they arrived at Vinson's school bus, Slover and Vinson got into an argument and Slover hit Vinson over the head several times with a flashlight. Defendant and Slover then had a discussion outside Vinson's bus in which they agreed that "somebody had to take him out or kill him." After defendant and Slover got back into the bus, defendant used a metal pipe to hit Vinson over the head "[m]ore than a couple of times." As defendant was hitting Vinson, Slover asked for Vinson's wallet, which defendant took from Vinson's back pocket and gave to Slover.
In addition, defendant gave a statement to the police in which he admitted involvement in the murder, stating that, after waking up following a night of drinking, he and Slover talked about robbing Vinson. They then entered Vinson's bus, at which time Vinson "jumped up ... and ... was coming at" them. Slover grabbed a flashlight and defendant grabbed a pipe, and each of them struck Vinson in the back of his head two or three times.
Defendant testified on his own behalf that he and Slover consumed an extremely large amount of alcohol and marijuana before the murder. According to defendant, he went to the junkyard with Slover with the intent of finding motorcycles with which to go "joyriding." But sometime after they arrived at the junkyard, Slover walked over to Vinson's school bus and defendant followed him. Slover opened the door of the bus and when he got to the top of the stairs, Vinson "jumped out." Slover then picked up a flashlight and hit Vinson over the head. According to defendant, Vinson came towards him, so he picked up a pipe and also hit Vinson over the head several times. Vinson then fell to the floor. Slover said, "[g]rab the wallet," and defendant did so, throwing it to Slover. Defendant claimed that he did not intend to hurt, kill *410 or rob Vinson, but was simply defending himself because he thought Vinson was attacking him.
Defendant also presented testimony by a psychiatrist who expressed the opinion that defendant was suffering from extreme intoxication when Vinson was killed, resulting in a "prostration of faculties," and causing defendant to be "unable to act with knowledge and purpose with ... respect to the criminal charges against him."
On appeal, defendant makes the following arguments:
I. PHOTOGRAPHS AND SLIDES OF THE VICTIM SHOULD HAVE BEEN DEEMED INADMISSIBLE.
II. THE COURT SHOULD HAVE GRANTED DEFENDANT A JUDGMENT OF ACQUITTAL, WHICH ERROR CLEARLY PROVIDED AN UNJUST RESULT.
III. THE TRIAL COURT ERRED IN REFUSING TO GRANT A NEW TRIAL, WHICH ERROR RESULTED IN A MANIFEST DENIAL OF JUSTICE.
1. The trial court's charge to the jury on intoxication improperly shifted the burden of proof to the defendant, constituting reversible error.
2. The defendant's motions for mistrial should have been granted on the ground that his right to a fair trial was prejudiced by the prosecutor's impermissible comments.
3. The court erred in deeming codefendant's statement to police admissible.
4. The charge given to the jury by the court assumed defendant to be guilty, constituting grounds for a new trial.
Defendant's only substantial argument is that the trial court violated his Sixth Amendment right of confrontation in ruling that Slover's statement to the police inculpating him would be admissible for the limited purpose of impeaching Slover's subsequent exculpatory statement. Defendant's other arguments are clearly without merit and do not require discussion. R. 2:11-3(e)(2).
During trial, defendant indicated his intention to call John Dobran, who had been incarcerated with Slover, to testify that Slover told him he had killed Vinson and that defendant left the *411 bus before Slover administered the fatal blows.[1] Defendant offered this testimony pursuant to Evidence Rule 63(10) as a declaration against penal interest. The trial court ruled that Dobran's testimony would be admissible but that if he testified, the prosecution would be permitted under Evidence Rule 65 to introduce portions of Slover's statement to the police which placed primary responsibility for the murder upon defendant for the purpose of impeaching Slover's later statement to Dobran. The court indicated that it would instruct the jury that the statement could not be used as independent evidence of defendant's guilt but only to show that Slover "said several different things on the subject." In light of this ruling, defendant did not call Dobran as a witness.
Evidence Rule 65 provides:
Evidence of a statement or other conduct by a declarant inconsistent with a statement received in evidence under an exception to Rule 63, is admissible for the purpose of discrediting the declarant, though he had no opportunity to deny or explain such inconsistent statement. Any other evidence tending to impair or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness.[2]
Slover's statement to the police placing primary responsibility for the murder upon defendant was inconsistent with his alleged subsequent statement to Dobran which substantially exculpated defendant. Therefore, under Rule 65, Slover's statement to the police was admissible for the purpose of impeachment. See State *412 v. Pierro, 253 N.J. Super. 280, 284-85, 601 A.2d 757 (App.Div.), certif. denied, 127 N.J. 564, 606 A.2d 374 (1992); see also United States v. Wuagneux, 683 F.2d 1343, 1357-58 (11th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); Henderson v. State, 765 S.W.2d 336, 338 (Mo. Ct. App. 1989); State v. Kline, 11 Ohio App.3d 208, 210-213, 11 OBR 330, 333-336, 464 N.E.2d 159, 162-65 (1983).
Nevertheless, defendant argued at trial, and again argues on appeal, that the trial court's ruling that Slover's statement to the police was admissible for the purpose of impeachment violated his rights under the Confrontation Clause. In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held that the introduction of an inculpatory out-of-court statement by a codefendant who does not take the stand violates a defendant's Sixth Amendment right of confrontation. But a codefendant's or accomplice's out-of-court statement may be introduced for a purpose other than proving the truth of what it asserts without violating a defendant's right of confrontation. Thus, in Tennessee v. Street, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), after the defendant testified that his confession had been coerced by the Sheriff reading an accomplice's confession and directing him to say the same thing, the trial court allowed the State to impeach defendant by introducing the accomplice's confession to show that it was different from defendant's confession in a number of material respects. The Supreme Court held that this use of the accomplice's confession for the purpose of impeachment did not violate defendant's rights under the Confrontation Clause:
The nonhearsay aspect of [the accomplice's] confession  not to prove what happened at the murder scene but to prove what happened when [defendant] confessed  raises no Confrontation Clause concerns.
....
Had the prosecutor been denied the opportunity to present [the accomplice's] confession in rebuttal so as to enable the jury to make the relevant comparison, the jury would have been impeded in its task of evaluating the truth of [defendant's] testimony and handicapped in weighing the reliability of his confession. Such a result would have been at odds with the Confrontation Clause's very mission  to advance "the accuracy of the truth-determining process in criminal trials."

*413 Moreover, unlike the situation in Bruton, 391 US, [123,] 134, 20 L Ed 2d 476, 88 S Ct 1620, [1627,] there were no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence.
[Id. at 414-15, 105 S.Ct. at 2081-82, 85 L.Ed.2d at 431-32.]
We believe that the same reasoning is equally applicable to this case. If unrebutted, an alleged accomplice's statement that he was solely responsible for a crime can be extremely strong evidence for the defense. However, such a statement can be seriously discredited by evidence that the accomplice made a statement on another occasion that the defendant was involved in the crime. Thus, if the jury had been denied the opportunity to hear Slover's statement inculpating defendant, its ability to evaluate the truthfulness of Slover's statement exculpating defendant would have been significantly impeded. Therefore, as in Street, it was necessary for the jury to hear both of Slover's statements "to advance `the accuracy of the truth-determining process.'" Id. at 415, 105 S.Ct. at 2082, 85 L.Ed.2d at 432. And as in Street, "there were no alternatives," such as the separate trials of codefendants suggested in Bruton, "that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence." Ibid.
We also note that if Slover had actually testified at defendant's trial that he was solely responsible for Vinson's murder, the State could have used Slover's prior inconsistent statement in cross-examining him. Evid.R. 20; State v. DiRienzo, 53 N.J. 360, 383, 251 A.2d 99 (1969). Thus, if the State were precluded by the Confrontation Clause from using Slover's prior inconsistent statement to impeach his out-of-court statement to Dobran, defendant would enjoy a significant strategic advantage in being able to present Slover's exculpatory statement in hearsay form. The State not only would be deprived of the opportunity of cross-examining Slover but also would be prevented from using one of the most effective techniques of witness impeachment, the introduction *414 of a prior inconsistent statement. The hearsay rule and the Confrontation Clause both reflect the view that live testimony with an opportunity for face-to-face confrontation is the most reliable method of determining the truth. Bourjaily v. United States, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 156-57 (1987); Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 606 (1980). Therefore, the Confrontation Clause should not be construed to impose limitations upon the impeachment of out-of-court statements admitted under an exception to the hearsay rule which would not apply to in-court testimony.
Our conclusion that the State could have introduced Slover's statement to the police for impeachment purposes is also supported by the line of cases which hold that "[b]ecause `hearsay rules and the Confrontation Clause are generally designed to protect similar values,' and `stem from the same roots,' ... no independent inquiry into reliability is required when the evidence `falls within a firmly rooted hearsay exception.'" Bourjaily v. United States, supra, 483 U.S. at 182-83, 107 S.Ct. at 2782, 97 L.Ed.2d at 157 (citations omitted); accord Ohio v. Roberts, supra, 448 U.S. at 65-66, 100 S.Ct. at 2538-39, 65 L.Ed.2d at 607-08. The rule codified in Evidence Rule 65 that evidence admissible under an exception to the rule against hearsay is subject to impeachment by the same methods which could be used if the declarant had testified at trial is as "firmly rooted" as the hearsay exception for declarations against penal interest codified in Evidence Rule 63(10). See Carver v. United States, 164 U.S. 694, 697-98, 17 S.Ct. 228, 229-30, 41 L.Ed. 602, 603-04 (1897); Fed. R.Evid. 804(b)(3), 806; Unif.R.Evid. 804(b)(3), 806; compare 3A Wigmore on Evidence §§ 884, 887 (Chadbourne rev. 1970) with 5 Wigmore on Evidence, § 1477 (Chadbourne rev. 1974). Therefore, the trial court correctly concluded that the State could impeach the credibility of Slover's out-of-court statement exculpating defendant by showing that he made another out-of-court statement which inculpated defendant.
Affirmed.
NOTES
[1] Slover's alleged statement to Dobran is referred to in this opinion as exculpatory because it assigned a lesser responsibility for the offense to defendant than did the State's evidence at trial. However, this statement indicated that defendant had participated in the robbery of Vinson and in fact inflicted the first blow upon him. Therefore, while this statement negated defendant's guilt of purposeful or knowing murder, it could have supported a verdict for felony murder.
[2] The Uniform Rules of Evidence and Federal Evidence Rules include similar provisions. Unif.R.Evid. 806; Fed.R.Evid. 806. We note that, effective July 1, 1993, New Jersey has adopted new rules of evidence. See 134 N.J.L.J. 798 (July 5, 1993). The subject of impeachment of a hearsay declarant is now addressed in Rule 806, which generally follows Fed.R.Evid. 806.