797 A.2d 175 (2002)
351 N.J. Super. 93
STATE of New Jersey, Plaintiff-Respondent,
v.
Daniel D. RIVERA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 2002.
Decided May 16, 2002.
*176 Peter A. Garcia, Acting Public Defender, for appellant (Steven M. Gilson, Designated Counsel, and on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, for respondent (James F. Smith, Assistant County Prosecutor, of counsel and on the brief).
Before Judges BRAITHWAITE, COBURN, and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
In this case we address, for the first time in New Jersey, whether a hearsay statement, both self-inculpatory and inculpatory of defendant, made by a co-defendant to police officers at the time of arrest, was properly received in evidence as an excited utterance under N.J.R.E. 803(c)(2). We conclude that such a statement, even assuming that it meets the requirement of the evidence rule, is so inherently unreliable that its admission in this case violated defendant's right to confrontation; accordingly, we reverse his conviction.
Defendant, Daniel D. Rivera, was convicted by a jury on all counts of an indictment charging the following offenses: possession of cocaine, N.J.S.A. 2C:35-10a(1) (count one); possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(3) (count two); distribution of cocaine, N.J.S.A. 2C:35-5a(1)-5b(3) (count three); employing a juvenile in drug distribution, N.J.S.A. 2C:35-6 (count four); conspiracy to distribute cocaine, N.J.S.A. 2C:35-5 and 5-2 (count five); use of paging device while engaged in a drug offense, N.J.S.A. 2C:33-20 (count six).
Defendant was sentenced on count four to a prison term of nine years with five years of parole ineligibility. Terms of five years were imposed on count three, and eighteen months on count six, both concurrent with the sentence on count four. Counts one, two, and five were merged into count three. Appropriate monetary penalties, as well as a two-year license suspension, were also imposed.
On December 9, 1999, Detective James Mooney of the Atlantic City Police Department, assigned to the Narcotics Special Investigation Squad, phoned pager number 653-2529 and received a return call showing 441-0932 on his caller ID. Mooney then cross-referenced the number with an address book which indicated that the number was for a residence at 61 North Martin Luther King Boulevard in Atlantic City.
The next evening, December 10, at approximately 7:00 p.m., Mooney called the same number from a pay phone at South Martin Luther King Boulevard. The call was returned and Mooney said, "Hello[,] *177 Dan." A Hispanic male replied, "Yeah." Mooney then asked about "get[ting] two bags of rock," meaning two bags of crack cocaine. The voice answered, "Yeah, I got it, but I'm in Pleasantville right now, you're gonna have to wait 15 minutes." They agreed that Mooney would call back.
At approximately 8:23 p.m., Mooney, from the same pay phone, called the same beeper number and added "zero two," which in code meant two bags. Less than three minutes later he received a call. Mooney answered, "Hi[,] Dan." The same Hispanic voice responded, "Yeah, where you gonna be?" Mooney said, "The parking lot of Studio Six," an Atlantic City nightclub. The voice stated, "Okay, I'll be there." As a result of the conversation, a police surveillance was set up outside the Schoolhouse Apartments, located at 61 North Martin Luther King Boulevard.
At approximately 8:30 p.m., a sixteen-year-old Hispanic male, subsequently identified as J.M., exited the Schoolhouse Apartments and proceeded to walk down an alleyway in the direction of the Studio Six parking lot, with Detective Tom Guercioni following twenty feet behind him. As J.M. reached the end of the alley, Detectives Glen Abrams and Louis DePaul, in plain clothes, approached him in an unmarked vehicle and exited. The juvenile, appearing to be shocked and nervous, threw two small bags of crack cocaine to the ground. Very excited and in a loud voice, he told the detectives that he was delivering crack for Danny Rivera and that Danny, who lived in Apartment 524B of the Schoolhouse Apartments, could tell them that the crack did not belong to J.M.
Approximately ten minutes after stopping J.M., Mooney, Guercioni, Abrams, and DePaul arrived at the Schoolhouse Apartments and proceeded to the fifth floor, via the stairs, intending to apprehend defendant. En route, at the second-floor landing, they met up with defendant who was going downstairs. As defendant started to turn away from the detectives, Guercioni asked him his name. Defendant identified himself and stated that he lived in 524B. Mooney recognized defendant's voice as that of the person whom he had spoken to earlier on the phone. According to the detectives, defendant acknowledged that an activated pager, which was on his belt, belonged to him. The pager was removed and Mooney pushed a retriever button on it which revealed stored numbers. Among the numbers he saw was that of the pay phone he had called from and the code that he had used. Defendant, who was placed under arrest, was searched, as was Apartment 524B. No drugs were found.
Defendant, age twenty-five and having prior convictions in 1994-95 for receiving stolen property and conspiracy to commit burglary, for which he received probation, testified in his defense. Defendant recalled that on December 10, 1999, he was in Apartment 524B, which belonged to Katherine Bruce, his girlfriend, and the mother of two of his children. Defendant, who was babysitting for the children while Bruce worked, was visited by various friends. As they all had decided to go bowling and play pool, defendant arranged for a neighbor in the building to take care of the children.
Prior to defendant's leaving, J.M., a friend's brother-in-law, arrived at the apartment and asked if he could use the phone. Defendant consented, and J.M. made several calls from the apartment. Because defendant wanted to contact Jennifer Shaner, another girlfriend and mother of his other children, and did not want Bruce to be alerted by her caller ID if Shaner called him on the apartment phone, he asked to use a pager that J.M. had. Accordingly, after J.M. gave him the pager, *178 defendant used a neighbor's phone in the building and called Shaner, leaving the pager number. Shaner subsequently beeped the pager three times and left the message "hello" and "besos," meaning "kisses," which the police, according to defendant, thought to be a code for drugs after they confiscated the pager. When the detectives arrested defendant, he was on his way to join his friends and J.M., all of whom had previously left the apartment. Defendant denied stating that the pager belonged to him and that he resided in Apartment 524B. He also maintained at trial that he was not involved in the selling of drugs that day, and that the drugs found on J.M. were not his (defendant's).
Efrain Roldan, who was one of defendant's friends in the apartment that evening, was leaving the apartment at about the time J.M. had arrived. He recalled J.M.'s saying that he would return in five minutes after "get[ting] a couple of dollars." Roldan also asserted that J.M. had subsequently told him that he had admitted in pleading guilty in juvenile court that the drugs belonged to him.
Katherine Bruce corroborated defendant's testimony that he was babysitting for their children that evening, that she and Shaner did not get along, and that defendant did not own a pager.
Defendant's primary point on appeal challenges the admissibility of the highly inculpatory statement made by J.M. at the moment of his arrest. The State contended that the statements were admissible as "excited utterances," N.J.R.E. 803(c)(2). At a hearing outside the jury's presence, Detective DePaul testified that on December 10, 1999, he and Detective Abrams, traveling in a car the wrong way on a one-way street just outside an alleyway near Martin Luther King Boulevard, pulled up to J.M. As the two detectives exited the car about five feet from the juvenile, he tossed two bags to the ground, which DePaul recognized as used to package illicit drugs. When DePaul then approached J.M. and told him he was under arrest, the juvenile, who "seemed shocked" that the detectives were there, suddenly blurted out that the crack was not his, that he was delivering it for Danny Rivera, and that they could speak to Rivera at Apartment 524B of the Schoolhouse Apartments. According to DePaul, a "panicked" J.M. kept repeating this rapidly and the detectives, now numbering three, instructed the juvenile, who looked around as if he wanted to escape the situation, to tone down his voice so that no one would overhear that he was informing on defendant.
At the conclusion of the hearing, the trial judge found J.M.'s statements admissible as "excited utterances." Specifically, the judge found that as a result of the arrest, J.M. was "startled, excited ... was shocked ... was panicked," and that the statements were made while J.M. "was under the stress of excitement caused by" the arrest, which constituted the "startling event or condition." While finding that the statements were made "without opportunity to deliberate or fabricate," the judge also concluded that the statement was, while not totally exculpatory, self-serving in the sense that J.M. was "at the very least spreading the blame" for his conduct. As a result, DePaul, Abrams, and Guercioni testified to the statements before the jury. J.M., who apparently was prosecuted as a juvenile, was not called as a witness at trial.
Clearly, J.M.'s statement was hearsay. N.J.R.E. 801(c). As a result, it was not admissible unless otherwise permitted by the Rules of Evidence, N.J.R.E. 802.[1] One *179 of the exceptions to the hearsay rule, embodied in N.J.R.E. 803(c)(2), is for an excited utterance, which is
A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate.
In Lieberman v. Saley, 94 N.J.Super. 156, 161, 227 A.2d 339 (App.Div.1967), we set out the requirements for admission under this rule. We noted that "the court must decide the preliminary question of whether the declarant had any opportunity for deliberation or reflection, or whether the utterance was a spontaneous one."
The matters for the court to consider are the element of time, the circumstances of the [incident], the mental and physical condition of the declarant, the shock produced, the nature of the utterance (whether against the interest of the declarant or not, or made in response to questions or involuntary), and any other material facts in the surrounding circumstances. These matters are all to be weighed in determining the basic question, namely, whether the utterance was spontaneous and unreflective, and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation.
[Ibid.]
Those same criteria have been applied in criminal prosecutions. See State v. Lyle, 73 N.J. 403, 412-13, 375 A.2d 629 (1977); State v. Newsome, 177 N.J.Super. 221, 230, 426 A.2d 68 (App.Div.1980); State v. Williams, 106 N.J.Super. 170, 172-73, 254 A.2d 538 (App.Div.), certif. denied, 55 N.J. 78, 259 A.2d 228 (1969), cert. denied, 397 U.S. 1057, 90 S.Ct. 1405, 25 L.Ed.2d 675 (1970).
Here, the trial judge found that most of the conditions for admissibility were met, that the arrest was a "startling event," and that J.M. was under the "stress of excitement caused by the event" when he made the statements. Significantly, the judge did not make an explicit finding that the statements "related to" the startling event. The issue of the relationship of the statement to the startling event in this case is questionable. The event here was the arrest, while the statement related to J.M.'s relationship with defendant and defendant's connection to the drugs, as well as providing defendant's location. Some courts have held that a less direct relationship of the statement to the event is merely a factor for the court to consider in evaluating whether the declarant had time to reflect before making the statement. United States v. Moore, 791 F.2d 566, 572-73 (7th Cir.1986); United States v. Phelps, 572 F.Supp. 262, 265-66 (E.D.Ky.1983). Unlike N.J.R.E. 803(c)(1) (present sense impression), 803(c)(2) does not require that the excited utterance be limited to describing the event that caused the excitement, only that it "relate" to the startling event or condition.[2] That language may afford "a broader *180 scope of subject matter coverage." Advisory Committee Note to Federal Rules of Evidence, Rule 803(2), set forth in 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence Historical Appendix § 803 App. 01[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2002). We have substantial doubt whether J.M.'s statement, in its entirety, may be viewed as relating to the event of his arrest. However, we need not resolve that question in this case since we conclude that a more important and overriding principle requires exclusion of the statements.
Admission of a hearsay declaration implicates concerns reflected in the Sixth Amendment's Confrontation Clause, U.S. Const. amend. VI, which is mirrored in our State Constitution. N.J. Const. art. 1, § 10. As the Supreme Court has noted, if read literally, the Clause would preclude admission of "any statement made by a declarant not present at trial." Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 605 (1980). However, such a construction "would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." Ibid., 100 S.Ct. at 2537, 65 L.Ed.2d at 605-06. Nevertheless, because "hearsay rules and the Confrontation Clause are generally designed to protect similar values," the Clause "bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." Idaho v. Wright, 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651 (1990). These competing considerations led the Court to the conclusion that a hearsay statement of an unavailable witness is admissible only if it bears adequate "indicia of reliability." Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. As the Court later explained its holding:
In Roberts, we suggested that the "indicia of reliability" requirement could be met in either of two circumstances: where the hearsay statement "falls within a firmly rooted hearsay exception," or where it is supported by "a showing of particularized guarantees of trustworthiness."
[Wright, supra, 497 U.S. at 816, 110 S.Ct. at 3147, 111 L.Ed.2d at 653 (quoting Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608).]
The "unavailability" requirement of Roberts was refined in United States v. Inadi, 475 U.S. 387, 393-94, 106 S.Ct. 1121, 1125, 89 L.Ed.2d 390, 397-98 (1986), to apply only when the challenged out-of-court statements were made in the course of a prior judicial proceeding. As a result, J.M.'s possible availability is irrelevant for Sixth Amendment purposes since his statement is not of the type embraced by Inadi.
Our Court has adopted the Roberts formulation to govern the admission of hearsay evidence, pursuant to a recognized exception, as against a Confrontation Clause challenge. State v. Miller, 170 N.J. 417, 425-27, 790 A.2d 144 (2002); State v. Smith, 158 N.J. 376, 384-85, 730 A.2d 311 (1999); see also State v. Sego, 266 N.J.Super. 406, 414, 629 A.2d 1362 (App.Div.), certif. denied, 134 N.J. 566, 636 A.2d 523 (1993). Although our courts have never addressed a Confrontation Clause challenge to the admissibility of excited utterance evidence, we are satisfied that such evidence qualifies as a "firmly rooted" hearsay exception that generally carries "sufficient indicia of reliability to satisfy the reliability requirement posed by the Confrontation Clause." White v. Illinois, 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 743 n. 8, 116 L.Ed.2d 848, 859 n. 8 (1992) (citing Wright, supra, 497 U.S. at 817, 820-21, 110 S.Ct. at 3147, 3149-50, 111 L.Ed.2d at 653, *181 655-56 and Bourjaily v. United States, 483 U.S. 171, 182-84, 107 S.Ct. 2775, 2782-83, 97 L.Ed.2d 144, 156-58 (1987)). As the Supreme Court noted, the spontaneous declaration (excited utterance) exception is at least two centuries old and is recognized by the vast majority of the states. Ibid.; see also United States v. Tocco, 135 F. 3d 116, 128 (2d Cir.), cert. denied, 523 U.S. 1096, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998); Martinez v. McCaughtry, 951 F.2d 130, 134 (7th Cir.1991); Puleio v. Vose, 830 F.2d 1197, 1206 (1st Cir.1987), cert. denied, 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988).
Nevertheless, we discern two features which distinguish J.M.'s statements from the "ordinary" excited utterance and compel further analysis. First, the statement was made by a participant in the criminal activity, although not indicted because of his juvenile status. Second, the statements were made to police officers at the time of arrest.
The vast majority of excited utterances admitted in criminal cases under the hearsay rule exception are made by victims or by third parties who witness the criminal event, either to third parties, see, e.g., Lyle, supra, 73 N.J. at 412, 375 A.2d 629; State v. Swint, 328 N.J.Super. 236, 246-47, 745 A.2d 570 (App.Div.), certif. denied, 165 N.J. 492, 758 A.2d 651 (2000); State v. Lazarchick, 314 N.J.Super. 500, 521-24, 715 A.2d 365 (App.Div.), certif. denied, 157 N.J. 546, 724 A.2d 804 (1998); State v. Taylor, 226 N.J.Super. 441, 452, 544 A.2d 883 (App.Div.1988); State v. Bass, 221 N.J.Super. 466, 482-83, 535 A.2d 1 (App. Div.1987), certif. denied, 110 N.J. 186, 540 A.2d 182 (1988); State v. Sands, 138 N.J.Super. 103, 106-07, 350 A.2d 274 (App. Div.1975), aff'd, 76 N.J. 127, 386 A.2d 378 (1978); State v. Tapia, 113 N.J.Super. 322, 331-32, 273 A.2d 769 (App.Div.1971), or, occasionally, to the police, see, e.g., State v. Simmons, 52 N.J. 538, 541-42, 247 A.2d 313 (1968), cert. denied, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969); State v. Whittaker, 326 N.J.Super. 252, 264, 741 A.2d 114 (App.Div.1999); State v. Federico, 198 N.J.Super. 120, 131-32, 486 A.2d 882 (App.Div.1984), aff'd, 103 N.J. 169, 510 A.2d 1147 (1986).
A few cases from other jurisdictions involve excited utterances implicating the defendant made by a co-defendant to a third party witness. Martinez, supra, 951 F.2d at 132-33; McLaughlin v. Vinzant, 522 F.2d 448, 449-51 (1st Cir.), cert. denied, 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975); State v. Davis, 141 Wash.2d 798, 10 P.3d 977, 986-87 (2000); State v. Dennis, 337 S.C. 275, 523 S.E.2d 173, 176-180 (1999); cf. State v. Baluch, 341 N.J.Super. 141, 182-83, 775 A.2d 127 (App.Div.) (statement made to a friend by defendant's husband, formerly a co-defendant but acquitted at a separate trial), certif. denied, 170 N.J. 89, 784 A.2d 721 (2001). In each of these cases, the courts considered and rejected Confrontation Clause challenges. Nevertheless, our research has disclosed only two cases that involved an inculpatory statement made by a co-defendant to or in the presence of police officers at the time of arrest. United States v. Lim, 984 F.2d 331, 336 (9th Cir.), cert. denied, 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993); United States v. Vazquez, 857 F.2d 857, 864-65 (1st Cir.1988). Lim contains no discussion of the Confrontation Clause issue, which apparently was not raised. Vazquez, on the other hand, rejected the Confrontation Clause attack, citing that court's prior opinion in McLaughlin. Vazquez, supra, 857 F.2d at 864-65. The decision contains, however, no discussion of the possible distinction between a case such as McLaughlin where the statement was made to a third-party witness and a situation where, as in Vazquez, the statement *182 was made to law enforcement officers at a time when the co-defendant-declarant is under arrest. We perceive a significant difference in the two scenarios.
In Lee v. Illinois, 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 526 (1986) (quoting Bruton v. United States, 391 U.S. 123, 141, 88 S.Ct. 1620, 1631, 20 L.Ed.2d 476, 488 (1968) (White, J. dissenting)), the Supreme Court noted that "arrest statements of a co-defendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and exonerate himself, a co-defendant's statements about what the defendant did are less credible than ordinary hearsay evidence."
A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation. For this reason, hearsay accounts of a suspect's statements implicating another person have been held inadmissible under the Confrontation Clause.
[Williamson v. United States, 512 U.S. 594, 607, 114 S.Ct. 2431, 2439, 129 L.Ed.2d 476, 488 (1994) (Ginsburg, J. concurring).]
It is true that neither Williamson nor Lee involved excited utterances. The former dealt with the admissibility of statements against penal interest under Federal Rule of Evidence 804(b)(3), while the latter involved a post-arrest confession of a co-defendant.
Most recently, in Lilly v. Virginia, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the Supreme Court held that accomplice confessions that implicate a defendant are not within a "firmly rooted" hearsay exception under Roberts, supra, and therefore violate the Confrontation Clause. In Lilly, the Virginia Supreme Court had approved the admission of a confession by defendant's brother/co-defendant in which he implicated both himself and his brother, under that state's declaration against penal interest exception. Id. at 125, 119 S.Ct. at 1894, 144 L.Ed.2d at 127. The Supreme Court first noted that "the simple categorization of a statement as a `declaration against penal interest' ... defines too large a class for meaningful Confrontation Clause analysis." Id. at 127, 119 S.Ct. at 1895, 144 L.Ed.2d at 128 (quoting Lee, supra, 476 U.S. at 544 n. 5, 106 S.Ct. at 2064 n. 5, 90 L.Ed.2d at 528 n. 5). The Court then went on to conclude that the use of such an exception to implicate a co-defendant of the declarant "encompasses statements that are inherently unreliable," "because an accomplice often has a considerable interest in `confessing and betraying his co-criminals.' " Id. at 131, 119 S.Ct. at 1897, 144 L.Ed.2d at 131 (quoting 5 Wigmore on Evidence § 1477, at 358 n. 1 (Chadbourn rev.1974)). Justice Scalia found the admission of the confession in Lilly to be "a paradigmatic Confrontation Clause violation." Id. at 143, 119 S.Ct. at 1903, 144 L.Ed.2d at 138 (Scalia, J., concurring).
We have taken a similar view of post-arrest accomplice statements. In State v. Colon, 246 N.J.Super. 608, 611-13, 588 A.2d 440 (App.Div.1991), we addressed that part of an accomplice's statement to police that incriminated the defendant and rejected its admissibility as a "tag along" to the self-inculpatory portion of the statement that had been introduced by the defendant. We pointed to the fact that the "accusatory reference to defendant's knowledge about the cocaine and its purpose tended to dilute [the accomplice's] personal responsibility and advanced the self-serving purpose of ingratiating herself with the police by aiding them in their search for evidence against defendant." *183 Id. at 612, 588 A.2d 440. We continued, quoting from State v. Gross, 121 N.J. 1, 11, 14, 577 A.2d 806 (1990), that "`accomplice statements in Confrontation Clause cases are considered to be presumptively unreliable,' " as a result of the accomplice's likely motivation "`to inculpate the defendant in order to exonerate him or herself, to gain revenge, or to curry favor with the authorities....'" Colon, supra, 246 N.J.Super. at 612, 588 A.2d 440.
Such statements are "particularly troublesome `in cases in which [they] are sought to be used in the absence of the declarant from court with no realistic opportunity for the defendant to confront the declarant and to attack the prior statement.'" Ibid. (quoting Gross, supra, 121 N.J. at 14, 577 A.2d 806). We followed Colon in State v. Bowser, 297 N.J.Super. 588, 595-99, 688 A.2d 1060 (App.Div. 1997), rejecting as a declaration against interest that portion of an accomplice's confession that incriminated the defendant, after he had introduced an exculpatory portion of that same confession. In so doing, we found support in State v. Maristany, 133 N.J. 299, 308-09, 627 A.2d 1066 (1993) (rejecting admission of co-defendant's statement inculpating defendant made to police two hours after arrest) and State v. Laboy, 270 N.J.Super. 296, 637 A.2d 184 (App.Div.1994) (reversible error to admit co-defendant's confession placing blame for homicide on defendant).
Finally, in State v. White, 158 N.J. 230, 232-33, 729 A.2d 31 (1999), the Court was confronted with a situation in which one of the perpetrators of an armed robbery and assault "confessed to participating in the crimes and contemporaneously stated that the defendant was not involved. At trial, portions of the perpetrator's confession exculpating the defendant from the crime were excluded from evidence, while the balance of the confession, which directly incriminated the declarant, was admitted." In the course of its analysis, the Court distinguished the case under review from "statements that exculpate the declarant from liability by shifting blame to anothersuch statements are inherently self-serving and presumptively unreliable," id. at 239, 729 A.2d 31 (citing Bowser, supra, 297 N.J.Super. at 597-98, 688 A.2d 1060), as well as "from statements of the declarant that inculpate the defendantsuch statements engender constitutional concerns of the defendant, i.e., violations of the Confrontation Clause of the Sixth Amendment, and may not be admitted as hearsay." Ibid. These situations were contrasted with the statements at issue in White, which "neither exculpate the declarant nor inculpate the defendant" but, rather "exculpate the defendant." Id. at 240, 729 A.2d 31.
In the present case we have a statement which not only inculpated defendant but tended to lessen the culpability of the declarant. As the trial judge aptly noted, J.M. was "at the very least spreading the blame" for his conduct. And while White, Bowser, and Colon all dealt with statements against penal interest, rather than excited utterances, we are of the view that their rationale applies equally to J.M.'s statement, given the circumstances under which it was uttered. Indeed, N.J.R.E. 803(c)(25), in apparent recognition of the Confrontation Clause concerns, expressly states that a declaration against interest "is admissible against an accused in a criminal action only if the accused was the declarant." We also note that, although J.M. clearly was a co-conspirator of defendant, his statement was not admissible under N.J.R.E. 803(b)(5) because it was not made in the course of or in furtherance of the conspiracy. See Vazquez, supra, 857 F.2d at 864.
*184 J.M.'s statement "hardly comports with the spirit of disinterested witness which pervades the [excited utterance] rule." United States v. Sewell, 90 F.3d 326, 327 (8th Cir.), cert. denied, 519 U.S. 1018, 117 S.Ct. 532, 136 L.Ed.2d 417 (1996). Rather, we agree with Chief Justice Finney of the South Carolina Supreme Court, dissenting in Dennis, supra, 523 S.E.2d at 180 (Finney, C.J., dissenting):
The majority holds that the brother's "excited utterance," inculpating only the appellant, made only one to two minutes after the shooting, and made to a witness who observed the brother leaving the scene while attempting to secrete the murder weapon, is so inherently reliable that its admission is constitutionally permissible. The suggestion that this statement is reliable because the brother did not have time to concoct a blameshifting story is naive, as is any assertion that the context in which the statement was made provides a substantial guarantee of its trustworthiness. To characterize all `excited utterances' as `firmly rooted' hearsay exceptions exempt from the strictures of the Confrontation Clause is an oversimplification similar to that made by the Virginia Supreme Court and criticized by the United States Supreme Court in Lilly v. Virginia, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). In the Lilly plurality opinion, the Court explicitly reiterated, "It is clear that our cases consistently have viewed an accomplice's statements that shift or spread blame to a criminal defendant as falling outside the realm of those `hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." 527 U.S. at 133, 119 S.Ct. at 1898 (internal citation omitted).
As we have noted, Dennis involved a less compelling case for exclusion because the co-defendant's "excited utterance" was made to a third-party and not, as here, to police at the moment of arrest.
The admission of J.M.'s statement, even if otherwise qualifying for admission under N.J.R.E. 803(c)(2), violated the "`central concern of the Confrontation Clause [which] is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" State v. Smith, 158 N.J. 376, 385, 730 A.2d 311 (1999) (quoting Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990)); see also Matter of C.A., 146 N.J. 71, 95, 679 A.2d 1153 (1996) ("Our rules of evidence insist that only statements subject to cross-examination, or other statements where `circumstantial guarantees of trustworthiness' exist, should be admitted as evidence.") J.M.'s statement failed that test.
Statements inculpatory of a defendant made by criminal accomplices to police upon arrest are, in our view, so inherently suspect that they should not be admitted in a criminal trial. Presumably most, if not all, criminals are "excited" when arrested. To sanction their hearsay accusations against accomplices made to the police would open a veritable "pandora's box" filled with the potential for abuse and in violation of the spirit of the Confrontation Clause, one of the essential components of a fair trial. Statements such as these do not carry with them "particularized guarantees of trustworthiness," Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. And, even if such statements met the requirements of an "excited utterance," a "firmly rooted" hearsay exception, ibid., they constitute such a special category of inherently unreliable statements that their admission is not automatically guaranteed by falling within the parameters of the exception. With reliability as the touchstone, *185 we conclude that these statements fall much closer to the types of post-arrest declarations consistently excluded under the Confrontation Clause than to those types of excited utterances which have been traditionally admitted as being "firmly rooted" within the exception. Given these concerns, we do not feel it would be appropriate to permit the reliability of this sub-set of excited utterances to be evaluated on a case-by-case basis. Only a complete surgery will effectively remove this affront to constitutional values.
We reject the State's contention that the error be deemed harmless. R. 2:10-2. The test is not, as the State suggests, that the evidence without the statement was sufficient for a jury to find guilt beyond a reasonable doubt. Rather, the test is whether "there is a reasonable doubt that the error contributed to the verdict." White, supra, 158 N.J. at 247, 729 A.2d 31 (citing State v. Macon, 57 N.J. 325, 338, 273 A.2d 1 (1971)); see also State v. McCloskey, 90 N.J. 18, 29-30, 446 A.2d 1201 (1982). Under that standard, we have no doubt that the error was not harmless. Specifically, we cannot accept the State's suggestion that the error was no more than the "proverbial icing on the cake." Rather, as defendant contends, J.M.'s statement was "the core of the State's case."
The remaining evidence linking defendant to J.M.'s activities was circumstantial and defendant provided answers to that evidence in his own testimony, corroborated to some degree by his witnesses. The fact that the jury did not accept his version of the events was likely influenced by the highly and directly inculpatory hearsay statement of J.M., whose demeanor could not be assessed by the jury and who was not subject to the test of cross-examination. While defense counsel argued in summation that J.M.'s statement was not reliable, the assistant prosecutor called it "a very important statement that was made by the child." Further, he argued that the statement was "reliable, because it was so specific. You can't make up these facts unless you knew them." As the prosecutor emphasized, J.M. was scared "because he got caught by the police and he's scared because he wasn't able to do the deal the dealer sent him out to do.... So he's frightened for that reason and he's frightened because it's the police." These arguments dispel any suggestion that the State did not consider J.M.'s statements to be a critical part of its proofs. As a result, the error in their admission was not harmless.
In light of our disposition, we need not address defendant's sentencing argument. We do, however, take this opportunity to comment on a matter of frequent occurrence. The trial judge cited N.J.S.A. 2C:44-1a(11) as an aggravating factor. That factor deals with situations where the imposition of a monetary penalty without a term of imprisonment "would be perceived by the defendant or others merely as part of the cost of doing business, or as an acceptable contingent business or operating expense associated with the initial decision to resort to unlawful practices." We do not view this factor as applicable unless the sentencing judge is balancing a non-custodial term as against a state prison sentence. Where, as in this case, defendant is convicted of a crime carrying a presumption of imprisonment, factor (11) is ordinarily inapplicable unless the court is being asked to overcome the presumption pursuant to N.J.S.A. 2C:44-1f(2). Other than in such an instance, factor (11) should not be utilized in sentencing for first and second degree crimes.
Reversed and remanded for a new trial.
NOTES
[1] N.J.R.E. 802 also provides for admissibility of hearsay if permitted "by other law." That aspect of the rule is not implicated in this case.
[2] The prior version of the rule, Evid. R. 63(4)(b), made a statement admissible if it was made "while the declarant was under the stress of a nervous excitement caused by such perception [of an event or condition], in reasonable proximity to the event, and without opportunity to deliberate or fabricate." Although the new formulation eliminated the phrase "in reasonable proximity to the event" and added the word "startling," the 1991 Supreme Court Committee Comment indicates the revisions were not intended to make any substantial change in the old rule. Rather, it appears that the changes were intended to conform the rule to the phrasing of the exception in the parallel federal rule. Fed. R.Evid. 803(2); see Biunno, Current N.J. Rules of Evidence, Comment 1 on N.J.R.E. 803(c)(2) (2002).